393 P.2d 251

**The STATE of Arizona, Appellee,**

**v.**

**Louis Lee SMITH, Appellant.**

**No. 1274.**

Supreme Court of Arizona.

In Division.

June 17, 1964.

Robert W. Pickrell, Atty. Gen., Norman E. Green, County Atty., of Pima County, by Carl Waag, Deputy County Atty., for appellee.

John R. McDonald, Tucson, for appellant.

BERNSTEIN, Justice.

Defendant was charged with and convicted of two counts of the sale of marijuana. His defense was that he had not made the sales. He was sentenced to from five to six years with the sentences to run consecutively. He appeals the convictions. Defendant contends (1) that testimony introduced at the trial that he was a marijuana "addict" was prejudicial, (2) that testimony of an attempted purchase made subsequent to and at a different time from the sales charged in the indictment was improperly admitted, (3) that he was entitled to a directed verdict of acquittal because the state's testimony shows that the sales were solicited in such a manner as to constitute entrapment. The defendant's contentions will be considered in the order heretofore set forth.

During the state's case and in the course of cross examination by defense counsel the following questions and answers were asked of and given by the arresting officer:

"Q Now, do you remember what the date was that you talked to Mr. Smith in your office?

"A Talked to him December 16th.

"Q December 16th, the day he was arrested?

"A That's right.

"Q That was prior to your being in the Sheriff's office?

"A What?

"Q That was prior to your being in the Sheriff's office or after?

"A I talked to him when I picked him up and talked to him in the Sheriff's office.

"Q In your office, was that before or after you talked to him in the Sheriff's office?

"A In my office I talked to him, the same night, before he was taken up there and booked he was taken into my office to fill out an addict form.

"Q A what?

"A An addict form which he filled out with his own handwriting.

**152**

"Q And this was at your office after you had been at the Sheriff's office?

"A That's right.

"Q Then you went back to your office?

"A After we were at the Sheriff's office we took him down to my office and he filled out the addict form.

"Q That's what I want to know.

"A He filled out the addict form and picked him up and booked him, that is for the records."

It will be noted that the mention of the "addict's form" was not responsive to the questions asked by defense counsel, and was not material to the guilt or innocence of the defendant. Defense counsel did not, as claimed by the state, "open the door" to further discussion of the subject. The state's witness was the one who injected the existence of the addict's form into the case.

■ As was said in People v. Baker, 147 Cal.App.2d 319, 305 P.2d 97, 100, quoting from People v. Bentley, 131 Cal.App.2d 687, 690, 281 P.2d 1, 3:

"The district attorney knew, or should have known, the testimony the officer was going to give and should have warned him not to make the statement. Every prosecutor who offers a witness to testify to conversations with an accused should know what the witness will relate if given a free hand. The prosecutor has the duty to see that the witness volunteers no statement that would be inadmissible and especially careful to guard against statements that would also be prejudicial."

In any event, the fact that the testimony was given on cross examination by defense counsel did not give the state the right to attempt to emphasize it. On redirect examination the prosecutor attempted, in the presence of the jury, to introduce the addict form as an exhibit.

"Q Mr. San Angelo, you stated that Mr. Louis came to your office to fill out some type of form is that right?

"A That's right.

"Q I believe you indicated it was an Addict Form of some sort?

"A Right.

"Q Do you have that form with you?

"A I think I gave it to you."

Defense counsel then objected, the jury was taken out and defense counsel made a request to reserve the right to make a motion. The card was not admitted at this time and the request of defense counsel to reserve the right to make a motion was granted. Defendant later moved for a mistrial in part on the ground that the testimony as to the addict form was so prejudicial that the defendant could not have a

fair trial. This motion was denied. Later in the trial, defense counsel attempted to rehabilitate his defendant by having the defendant testify that he had not used marijuana in many years and that he was not addicted to its use.

"Q  Will you tell the Court and the jury what occurred at the office there?

"A  Well, he—when we get there he bring out some little small slips and asked us if we would sign it. He said it was just for Court Records, you know, wouldn't use it against us, you know. He said how long had we ever smoked marijuana. I told him I used to when I was in San Francisco, but I quit because I couldn't sleep, I quit. He asked me how long did I smoke. I told him about two or three years. He filled the slip out himself and asked me if I would sign it. Yesterday he said—a lot of different things was on there that I didn't put on there."

To impeach this testimony the state was allowed on rebuttal to introduce the addict form.

"Q  I show you Plaintiff's Exhibit No. '3' for identification and ask you if you recognize it (indicating)?

"A  Yes, I do.

"Q  Who filled out that form?

"A  Louis Smith, alias Rock.

"Q  Did he fill out the whole form with the exception of your signature?

"A  Correct, and the exception he didn't know how to spell the word 'marijuana' and I wrote it in.

"MR. HEALY: All right, I will offer this (indicating).

"THE COURT: Any objection to '3'?

"MR. HEALY: I will offer State's Exhibit '3' for identification at this time.

"MR. ABBEY: Objection on the basis of the prejudicial aspect.

"THE COURT: Overruled. It may be admitted."

In addition the defendant was cross examined on his use of marijuana. He was asked if he knew what one under the influence of marijuana "looks like". A state's witness was questioned on whether he knew what one under the influence of marijuana "looks like" and on stating that he did, was asked if the defendant was under the influence of marijuana at the time of the second sale. Although he was eventually not allowed to answer the question because the trial judge changed his ruling as to the state's witness' qualifications as an expert, the cumulative effect on the jury of the

questioning reinforced the immaterial testimony as to the addict's form to the effect that the defendant was a marijuana user.

There is nothing in the record to show that the defendant had ever been *convicted* of using marijuana. Further his testimony is a denial that he was an addict.

The introduction of the addict form confronts us with a problem similar to that in State v. Jacobs, 94 Ariz. 211, 382 P.2d 683. In that case a witness for the state referred to a "mug shot". We said:

"Reference to a police photograph of a defendant by a state's witness in a criminal trial has been held prejudicial error as implying a prior criminal conviction." 94 Ariz. at 212, 382 P.2d at 684.

and again

" * * * [T]he record of prior crimes is admissible only for impeachment purposes." 94 Ariz. at 213, 382 P.2d at 685.

As we said in State v. Kellington, 93 Ariz. 396, 398, 381 P.2d 215, 216:

" * * * The effect of such testimony, having no relation to the crime charged, was to create in the minds of the jury an impression that the defendant's character was bad, and no admonition by the court could expunge this prejudicial attribute."

In the instant case the having of an addict's form implies the commission of a prior crime of using marijuana at least once, a misdemeanor under A.R.S. § 36–1062 or more than once, a felony under A.R.S. § 36–1002.

In State v. Johnson, 94 Ariz. 303, 306, 383 P.2d 862, 863–864 we said:

"We think, however, that the prejudicial effects of showing specific acts of misconduct *which are not sustained by a conviction* are such as to greatly outweigh the purported damaging effect to the state's case. The danger is twofold: First, that the jury may conclude that the defendant is a 'bad man' and convict on lesser evidence than might ordinarily be necessary to support a conviction, and second, that if the door is opened to such evidence, the defendant is in danger of having to defend every incident of an entire lifetime in a single trial." (Emphasis added)

In State v. Johnson, supra, as in this case the misconduct shown was not supported by a conviction. In Johnson the subject of whether defendant had been guilty of the misconduct was first opened by defense questioning. In this case as in Johnson, the misconduct could not be offered for the substantive purpose of tending to prove the crime charged. In this case as in John-

son the misconduct could only be introduced for the purpose of collateral impeachment on an immaterial matter and was therefore highly prejudicial.

■ While what we have said demands that the case be sent back for a new trial we discuss appellant's other contentions for the guidance of the trial court. The trial judge allowed some questioning as to a subsequent unsuccessful attempt to buy marijuana from the defendant. The court sustained an objection to this line of questioning. The state was attempting to prove that defendant would not make the subsequent sale because he then knew the purchaser to be a narcotics agent. If the proof of subsequent sale is reversible error then proof of an unsuccessful attempt to buy after the commission of the crime charged must fall in the same category. State v. Johnson, supra. The ruling of the trial judge was correct.

■ Defendant contends that he was entrapped as a matter of law because the narcotics agent came to town specifically to make "buys" of marijuana. This contention has no merit. State v. Hernandez, 96 Ariz. 28, 391 P.2d 586.

Reversed and remanded for new trial.

UDALL, C. J., and STRUCKMEYER, J., concur.