248

438 P.2d 317

STATE of Arizona, Appellee,

v.

Lawrence Allen FASSLER, Appellant.

No. 1 CA–CR 132.

Court of Appeals of Arizona.

March 7, 1968.

Rehearing Denied April 5, 1968.

Review Granted May 7, 1968.

Darrell F. Smith, Atty. Gen., by Jordan L. Green, James S. Tegart, Asst. Attys. Gen., for appellee.

Allen L. Feinstein, Phoenix, for appellant.

STEVENS, Judge.

The appellant, hereinafter referred to as the defendant, was convicted of the of-

fense of receiving stolen property, an offense defined by A.R.S. § 13–621, subsec. A. He was adjudged guilty and sentence was pronounced. He was released on bond pending appeal. The defendant was vigorously represented through all of the procedural steps, including the passing of sentence, by counsel of his own choosing and his present counsel has carried forward in like manner.

■ In reviewing the record in connection with this appeal, we view the evidence in the light most favorable to sustaining the conviction. The following is a brief outline of the facts. The defendant was a salesman for a company selling office equipment including calculators and typewriters. Contrary to company policy, he would buy and sell used office machines as a matter of personal business as distinguished from company business. Sometimes he would also receive used equipment in trade in relation to company business. The defendant also owned some real property and one Lapsley was a tenant. Lapsley is the person from whom the defendant received the stolen typewriter specified in the information.

Lapsley testified that he and the defendant went to Mesa, Arizona in a car operated by the defendant and that while the defendant was making a business call for his employer, Lapsley remained outside of the building.

According to Lapsley, on the return trip to Phoenix, the defendant advised Lapsley as to the machines which were to be stolen and their location in the building, these being machines which the defendant was willing to buy. Thereafter Lapsley returned to Mesa and in the nighttime entered the building in question removing the designated machines but not taking other machines or property. On the following morning arrangements were made between Lapsley and the defendant to accomplish a transfer of possession near a named Phoenix restaurant. Prior to the transfer, Lapsley advised the police who were present at the designated location.

The police observed the exchange of possession of the office machines including the typewriter in question and observed the defendant in the act of extracting money from his billfold with which to pay Lapsley. The foregoing is a brief résumé of some of the evidence which the jury must have believed.

During the course of the trial the defendant took the witness stand and testified. He classified Lapsley as a heavy drinker, as one who was frequently drunk, as one who could not pay his rent, and as one who dealt rather liberally with the truth. The defendant admitted that on an earlier occasion he had purchased a vacuum cleaner from Lapsley. He also admitted that on another occasion he received two typewriters from Lapsley applying the purchase price thereof on back rent. On the occasion which we have under consideration in connection with the offense now on appeal, the defendant received four office machines from Lapsley including an IBM typewriter and an Olivette-Underwood calculator. The defendant urged upon the court and the jury that he believed that all of the items which he had purchased from Lapsley in each of the instances heretofore mentioned, including the incident in question, had been purchased by Lapsley in bars. The defendant urged that he had no indication that any of the items had been stolen. Lapsley testified that he and the defendant had traveled to Tucson in a car driven by the defendant and that it was in Tucson that Lapsley stole the two typewriters which he had turned over to the defendant to apply on rent.

### ACCOMPLICE

■■ There was no request for an instruction on the law relative to the testimony of an accomplice and the trial court did not instruct on the subject on its own motion. A.R.S. § 13–136 is as follows:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends

to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In the case of State v. Howard, 97 Ariz. 339, at pp. 341 and 343, 400 P.2d 332, at pp. 333 and 335 (1965), we find the following statements:

"The test of whether or not one is an accomplice is whether he could be informed against for the same crime of which the defendant is accused. State v. Thomas, 79 Ariz. 355, 358, 290 P.2d 470, 472.

\* \* \* \* \* \*

"It is the announced rule in Arizona that only where the evidence is clear and undisputed that a witness is not an accomplice is it proper for the court to fail to submit the question of whether the testimony of the accomplice has been corroborated. State v. Gutierrez, 81 Ariz. 377, 306 P.2d 634.

"In the instant case, the court below failed to submit any instruction whatsoever concerning the necessity for corroboration of the testimony of the complaining witness. \* \* \*

\* \* \* \* \* \*

"Failure to instruct the jury on the applicable principles of law concerning the necessity for corroboration of the testimony of the accomplice even though not requested is reversible error \* \* \*."

The defendant cites Stephenson v. United States, an opinion of the United States Court of Appeals, Ninth Circuit, on an appeal from the United States District Court for the District of Alaska, 211 F.2d 702, 14 Alaska 603, 53 A.L.R.2d 812 (1954) and urges that in the situation heretofore outlined in this opinion Lapsley and the defendant were accomplices in the burglary, in the resulting theft, and in the defendant's receipt of stolen property. We quote the following from the Arizona Revised Statutes:

"§ 13–621.

"A. A person who, for his own gain, or to prevent the owner from again possessing the property, buys or receives personal property, knowing the property to have been stolen \* \* \* is guilty of a felony if the value of the property bought or received is fifty dollars or more.

"§ 13–137.

"The parties to a crime or a public offense are classified as principals and accessories.

"§ 13–138.

"The distinction between an accessory before the fact and the principal in cases of felony is abrogated.

"§ 13–139.

"All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, \* \* \* are principals in any crime so committed.

"§ 13–140.

"All persons concerned in the commission of a crime whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall be prosecuted, tried and punished as principals, and no other facts need be alleged in any indictment or information against such a person than are required in an indictment or information against a principal."

Stephenson states that there is a trend toward considering a person in Lapsley's status as an accomplice. In our opinion the Arizona Supreme Court case of State v. Bundy, 91 Ariz. 325, 372 P.2d 329, 99 A.L.R.2d 808 (1962), fully and adequately answers the defendant's contentions, the answer being adverse to the defendant's point of view. We hold that even though the property had been stolen by Lapsley pursuant to a joint plan and design with the defendant, Lapsley was not an accomplice of the defendant in relation to the

defendant's receipt of the stolen property. There was no error in the failure to instruct on the subject of an accomplice pursuant to A.R.S. § 13–136.

## POSSESSION OF STOLEN PROPERTY

■ The California Jury Instructions—Criminal, are extensively used in Arizona. They must be used with caution. There appears to be a greater liberality allowed in California courts than in Arizona courts in relation to instructions which could be classified as commenting on the evidence. The revised edition of these instructions was published in 1958 and contained Instruction No. 235 on the subject of the possession of stolen property. In part, the instruction states:

> "One who is found in the possession of stolen property is bound to explain such possession in order to remove the effect of that fact as a circumstance * * *"

In the case under consideration, Instruction No. 235, including the above quoted portion thereof, was given. In the Superior Court the defendant objected to the instruction but did not object to the above quoted language. It is the above quoted language which is now urged as error. The defendant points out that the 1967 pocket parts, (received by the Arizona State Department of Library and Archives on 19 December 1966, the trial was held on 22 and 23 December 1966) contains a modified instruction 235 which reads as follows:

> "The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of theft. It is, however, a circumstance to be considered in connection with other evidence. To warrant a finding of guilty, there must be proof of other circumstances tending of themselves to establish guilt.
>
> "In this connection you may consider the defendant's conduct, his false or contradictory statements, if any, and any other statements he may have made with reference to the property. If a person gives a false account of how he acquired possession of stolen property this is a circumstance that tends to show guilt."

We approve of the modified instruction.

■ We find an absence of reversible error for two reasons. First, the record was not adequately preserved as required by Criminal Rule 272, 17 A.R.S. and Civil Rule 51(a), 16 A.R.S. Second, the defendant testified. He gave his explanation of possession and his excuses for his failure to appreciate that the articles were stolen. Under these circumstances, the instruction cannot be considered to be a comment upon his right to remain silent, he having elected to testify

## DEFENDANT'S STATEMENT TO THE POLICE

During the trial there were several "bench conferences" that is, conferences between the court and counsel in the courtroom and out of the hearing of the jury. Most of these were reported by the court reporter. One crucial conference was not reported. However, in relation to this conference the court stated the substance of his remarks and warnings and we have no reason to doubt the accuracy thereof.

During the prosecution's direct examination of the State's witness Gomez, a Sergeant of Detectives of the Police Department of the City of Mesa, the Deputy County Attorney meticulously avoided examining the witness as to conversations with the defendant which would reflect upon the offense then being tried. The reporter's transcript reflects the following:

"Q. Did you have occasion to question the defendant pertaining to the arrest? Did you question the defendant?

"A. Yes, I did.

"THE COURT: Will counsel approach the Bench. (Whereupon there was a Bench conference which was not reporter. (sic)

"THE COURT: For the record, you have withdrawn the last question?

"MR. BRAZLIN: Yes, I have."

As to the unreported bench conference, we must wait until after the State rested and until after evidence had been presented on behalf of the defense before we find the trial judge's explanation of his advice and warnings. By this time the defendant had testified in part and his wife had testified. The defendant testified that he had been warned of his rights, that he had asked for counsel and that he had not made the statements attributed to him by the officers. It was in this setting that defense counsel moved for mistrial, the record reflecting the following:

"MR. BRAZLIN: This is a record being made outside the presence of the jury on a motion of the defendant to determine the admissibility of the testimony of Officers Gomez and Allen as to the confession made by the defendant."

The Court stated:

"It became apparent to the Court at the close of the testimony of the law-enforcement officers that were called as witnesses by the state that no confession or statement against interest or exculpatory statement was being used in support of the State's case, and that when on cross examination defense counsel asked the witness Gomez questions that indicated that conversations with the defendant would be brought out, the Court called counsel to the Bench for a Bench conference, which was not reported, but which, as the Court remembers it, was called for the purpose of warning defense counsel that such conversations might well lead to the elicitation of a confession or a statement against interest or some exculpatory statement, and that counsel was then warned that to pursue questions on cross examination of the witness might well bring that out, and that if such did come out the defense would then be burdened with it, being brought out by the defense counsel.

\* \* \* \* \* \*

"But the Court feels that after giving you this warning as to the possibility of such statements being brought out on cross examination, having not been pursued by State's counsel, on direct examination, and it being apparent that the State's counsel did not intend to or wish to rely on any statements or confessions made by the defendant to any officer, that these matters being brought out on cross examination would in the view of the Court indicate that you waived any rights under Miranda and that you may have had something else in mind by way of cross examination that to you, at least, might have been considered or deemed favorable to your client. \* \*"

Let us now return to the setting for the receipt of the evidence which it is now urged constitutes reversible error.

▉ Shortly after the unreported bench conference, the reporter's transcript discloses the following cross examination by defense counsel of Officer Gomez:

"Q. What was your basis for a determination that the defendant knew the items were stolen?

"A. I had—prior to that I had received information that this transaction was going to take place there.

"Q. Who was this information from?

"A. I overheard a conversation on the phone between a Phoenix officer and Mr. Lapsley.

\* \* \* \* \* \*

"Q. Then, other than the overhearing of that one conversation, do you have any basis whatsoever that the defendant, Mr. Fassler, knew that he was buying stolen items?

"A. Yes.

"Q. What is the basis for that?

"A. Mr. Fassler told me that he knew—

"Q. Well, let me ask a question.

"MR. WILKINSON: Let him answer the question

"THE COURT: Just a minute.

"MR. WILKINSON: Let him answer the question. It is responsive. 'Do you have any basis?'

"THE COURT: The answer is responsive to that question and may come in.

"MR. BRAZLIN: Well, Your Honor—

"THE COURT: You may answer the question. Do you need to have it read back to you so you will know exactly what it is?

(The pending question was read by the reporter.)

"THE WITNESS: I asked Mr. Fassler if he knew these machines were stolen property taken from Mesa in a burglary, and he said, 'No,' he said, 'at first.' 'No, I didn't at first.' I asked him 'When did you find out?'

And he said, 'When I saw them I recognized them.'

And I said, 'And you were still planning on buying them?'

And he said, 'Yes.'

And I asked why.

And he said, 'Well, before I go any further I better consult an attorney.' "

Thereafter and prior to the time the State rested, Detective Allen of the Police Department of the City of Mesa was placed on the stand by the prosecution and the cross examination of Detective Allen is, in part, as follows:

"Q. You say, 'Mr. Fassler was placed in our patrol car.' I assume that means yours and Sergeant Gomez?

"A. Yes, that is right.

"Q. Was there anyone else present in the car?

"A. No.

"Q. Was there any conversation held in that car?

"A. Yes, we had some conversation.

"Q. Would you relate to the Court the extent of the conversations?

"A. To the best of my knowledge Sergeant Gomez advised Mr. Fassler of certain rights and talked with him about these machines.

"Q. Did he ask Mr. Fassler whether he knew of the burglary?

"A. I believe he did, yes.

"Q. And what was Mr. Fassler's answer to that?

"A. I believe he asked him if he knew the machines were stolen, rather than if he knew of the burglary.

"Q. Yes.

"A. And he said at the time, no, but when he saw the machines he did realize they were stolen.

"Q. Was (sic) any other questions posed to Mr. Fassler?

"A. I believe he was asked if he intended to go ahead and buy these machines, at which time he said, 'Yes.'

"Q. And for what purpose would he be buying the machines, did he say?

"A. No, sir.

"Q. Did you or did anyone else in your presence ever ask Mr. Fassler whether or not these machines were to be returned?

"A. Not to my knowledge, no, sir."

In our opinion the statements by Detectives Gomez and Allen were responsive to the questions. Counsel for the defendant may have been surprised but he had been adequately forewarned by the trial court. We must remember that witnesses are sworn to tell "the truth, the whole truth". Under some circumstances a witness may be criticized for volunteering matter beyond the requirements of the particular question. We cannot expect witnesses to be both lawyer and judge and to testify that there is nothing more, when there was more, when the question clearly calls for the additional though devastating information. The error, if there be error, under these circumstances was invited and is not available as grounds for reversal. State v. Gortarez, 96 Ariz. 206, 393 P.2d 670 (1964); State v. Arriola, 99 Ariz. 332, 409 P.2d 37 (1965); State v. Cousins, 4

Ariz.App. 468, 421 P.2d 901 (1966) Rev. denied 17 Jan. 1967. In State v. Couet, 71 Wash.Dec.2d 760, 430 P.2d 974 (1967), the Supreme Court of Washington expressed the rule succinctly as follows:

"This evidence was first elicited on cross-examination of one of the police officers by defendant's own counsel, hence, the defendant has waived the right, if any, to object. * * *"

It is recognized in State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966) that there are some situations wherein invited error can be so extreme as to be available on appeal even though the error was invited. We hold that this is not the situation in the case before us.

■ If there were any deficiencies in the State's evidence, and we find none, these were rectified by the evidence presented for the defense. State v. Weis, 92 Ariz. 254, 375 P.2d 735 (1962).

Judgment affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.