446 P.2d 454

**STATE of Arizona, Appellee,**

v.

**Lawrence Allen FASSLER, Appellant.**

**No. 9280–PR.**

Supreme Court of Arizona.

In Banc.

Oct. 30, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by Jordan Green, Asst. Atty. Gen., for appellee.

Allen L. Feinstein, Phoenix, for appellant.

McFARLAND, Chief Justice:

Lawrence Allen Fassler, hereinafter referred to as defendant, was charged with, tried, and convicted of the crime of receiving stolen property in violation of A.R. S. § 13–621, and sentenced to confinement in the penitentiary for not less than one year nor more than two years. From this conviction and sentence he appealed to the Arizona Court of Appeals. 7 Ariz. App. 248, 438 P.2d 317. The judgment of the trial court was affirmed, and defendant has petitioned this Court for review of the case.

The property he was charged with having received on August 12, 1966, knowing it to be stolen, was one IBM electric typewriter valued in excess of $50. At the trial two employees of Medical Investment Company in Mesa, Arizona, testi-

fied that several days prior to August 12, 1966, defendant had visited the company offices while the IBM typewriter at issue was visible and sold the company a calculating machine; that the typewriter was in the office on the evening of August 11th, but was missing the following day, although no one had been given permission to take it. Police Officer Delbert Nielsen testified that, on August 12, 1966, he investigated an apparent burglary at the Medical Investment Company in Mesa of several machines, one of which was the IBM typewriter at issue.

William Lapsley, III, testified that he was a tenant in an apartment owned by defendant, and that, on August 8, 1966, he drove with defendant to Mesa, at the time defendant sold the calculating machine to Medical Investment Company. Lapsley further testified that he and defendant made arrangements for Lapsley to steal the machine; that the machines were to be stolen from the same office they had visited previously; and he and defendant had agreed upon a price of $200 for four machines; that defendant suggested the idea of stealing the machines, and had told Lapsley where the machines were located in the building.

Lapsley then testified in detail as to the arrangements made between himself and defendant for the transfer of the machines; that he stole the machines, and thereafter telephoned defendant to arrange to transfer them; and that the transfer was made in a parking area at McDowell Road and the Black Canyon Highway in Phoenix; that before the transfer was completed the police arrived—that they had come in response to a telephone call made by Lapsley; he stated that he had called the police because he was in trouble and thought the county attorney might dismiss another charge against him. Police Officers Dudley Gibson, Herschel Taylor, Ray Gomez, and James H. Allen testified that they went to the parking area near Mc-Dowell Road and the Black Canyon Highway on August 12, 1966, in accordance with a telephone call made that morning by Laplsey; that they saw Lapsley transfer the IBM typewriter and other machines to defendant in the parking area; that they thereupon placed defendant under arrest, searched defendant's automobile, and questioned defendant. Upon cross-examination by counsel for defendant Officer Gomez testified:

"Q. Then, other than the overhearing of that one conversation, do you have any basis whatsoever that the defendant, Mr. Fassler, knew that he was buying stolen items?

"A. Yes.

"Q. What is the basis for that?

"A. Mr. Fassler told me that he knew —

"Q. Well, let me ask a question.

"MR. WILKINSON: Let him answer the question.

"THE COURT: Just a minute.

"MR. WILKINSON: Let him answer the question. It is responsive. 'Do you have any basis?'

"THE COURT: The answer is responsive to that question and may come in.

"MR. BRAZLIN: Well, Your Honor—

"THE COURT: You may answer the question. Do you need to have it read back to you so you will know exactly what it is?

"(The pending question was read by the reporter.)

"THE WITNESS: I asked Mr. Fassler if he knew these machines were stolen property taken from Mesa in a burglary and he said, 'No,' he said, 'at first.' 'No, I didn't at first.'

"I asked him, 'When did you find out?'

"And he said, 'When I saw them I recognized them.'

"And I said, 'And you are still planning on buying them?'

"And he said, 'Yes.'

"And I asked why.

"And he said, "Well, before I go any further I better consult an attorney.'

"So I took him to a pay phone and he called an attorney."

Officer Allen confirmed testimony of Gomez as to the admission allegedly made by defendant to the effect that after he realized the machines were stolen he intended to go ahead and buy them. Defendant denied having made the statements, and testified that Lapsley was his tenant and that he had previously bought adding machines and vacuum cleaners from him, and he did not know the IBM had been stolen until he was so told by the police officers.

The next day defendant's counsel moved for a determination of the admissibility of the testimony of Officers Gomez and Allen upon the grounds that the statements were against interest and were inadmissible in that a determination of voluntariness had not been made by the court and they did not meet the test set forth in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The court stated:

"You didn't phrase your motion as being one for a mistrial, but if you want it phrased that way the record will show this is what you had in mind."

Counsel then stated that that was exactly what he had in mind. The court gave as a basis for its denial of the motion for a new trial the fact that it had warned counsel for defendant of the danger of pursuing questions asked of three of the five officers who testified as to whether any conversation with or interrogation of defendant had occurred, and stated:

"* * * that these matters being brought out on cross examination would in the view of the Court indicate that you waived any rights under Miranda and that you may have had something else in mind by way of cross examination that to you, at least, might have been considered or deemed favorable to your client. * * *"

The first question presented · for review by counsel for defendant is whether the court erred in denying defendant's motion for a mistrial. The record shows that the court made no finding that the admissions were voluntary. The State relied upon the ground stated by the trial court. This Court has previously set forth the rules in regard to the admission of a statement of confession. In State v. Goodyear, 100 Ariz. 244, 413 P.2d 566, we held:

"It is the duty of a trial court to hold a hearing as to voluntariness of a statement or confession, if a question as to its voluntariness is raised—either by the attorneys, or one is presented by the evidence. * * *"

In State v. Simoneau, 98 Ariz. 2, 401 P.2d 404, we stated:

"* * * Of course, where no question is presented to the court either by counsel or by the evidence at the trial suggesting that a confession is involuntary, there is no issue of fact to be determined by the court in the absence of the jury and no need for a specific ruling.

"But here there is a slight suggestion arising from the appellant's testimony at the hearing outside the presence of the jury which we believe is sufficient to raise an issue. Each case must stand on its own facts as to whether it should be remanded to the trial judge for a limited hearing to determine whether a confession is voluntary or whether a new trial should be granted. See Jackson v. Denno, supra [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908]. In this instance we have concluded that justice will be best served by remanding the cause to the Superior Court of Maricopa County only for the purpose of a hearing to determine whether the confessions were voluntary. * * *"

The question then is whether under the record it was the duty of the court to have made a determination of the voluntariness of the statements of de-

fendant. While the statements were made upon cross-examination it will be noted that the counsel for defendant interrupted at a time when he could apparently see he was leading into this question, and said:

"Well, let me ask a question."

Then, on the objection of the State, the court stated:

"Let him answer the question. It is responsible. 'Do you have any basis?'"

The court had previously warned counsel for defendant of the danger of pursuing this line of questioning of the officers. It should have been even more apparent to the court that this was a danger period, and therefore it should have permitted counsel to interrupt the questioning of the officers. Under the record of the instant case, it is clear that it falls within the holding in State v. Goodyear, supra, and State v. Simoneau, supra, for there was certainly a suggestion arising from the testimony that statements were about to be related which required a determination of voluntariness.

The next question presented is whether the court improperly instructed the jury in regard to the failure of defendant to explain his possession of stolen property as an inference of guilt. The instruction does not meet the standards which we have previously set forth. State v. Jackson, 101 Ariz. 399, 420 P.2d 270.

The instruction is particularly objectionable where the court stated:

"'One who is found in the possession of stolen property is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with all other evidence, pointing to his guilt, and if he gives a false account of how he acquired that possession or, having reasonable opportunity to show that his possession was honestly acquired, he refused or fails to do so, such conduct is a circumstance that tends to show his guilt.'"

The instruction as given was taken from California, which instruction has since been revised. In the case of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the United States Supreme Court reversed the decision of the California court where the following instruction was given:

"As to any evidence of facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

In so doing, the court stated:

"'It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistable, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. * * * What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.'"

The State contends that when defendant took the stand he waived all his Fifth Amendment rights, since he voluntarily offered himself as a witness; however, that does not give the court the authority to comment upon the evidence or lack of evidence in a case by emphasizing what a defendant is "bound" to do.

Defendant also assigns as error the failure of the court to give an instruction as to the effect of the testimony of an accomplice. In the case of State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739, we held:

"* * * 'we have repeatedly held that the test to determine whether a witness is an accomplice is whether the witness could be informed against for

the same crime which the defendant stands accused.' State v. Sims, 99 Ariz. 302, 303, 306, 409 P.2d 17, 20. * * *"

Under the test as set forth in Ballesteros, supra, the witness Lapsley was not an accomplice to the charge of receiving stolen property in violation of A.R.S. § 13–621.

As we stated in State v. Simoneau, supra, each case must stand on its own facts as to whether there should be a new trial or the case merely be remanded for hearing on the voluntariness of the statements. The facts of the instant case show it was the duty of the court to have made a determination outside the presence of the jury as to the voluntariness of the statements testified to by the police officers. Because this was not done, coupled with the objectionable instruction, a new trial is required.

We therefore reverse the decision of the trial court, and remand for further proceedings not inconsistent with this decision.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.