514 P.2d 1008

**The STATE of Arizona, Appellee,**

v.

**Bobby Lee BREWER, Appellant.**

**No. 2379.**

Supreme Court of Arizona,
In Division.

Oct. 3, 1973.

Gary K. Nelson, Atty. Gen. by William P. Dixon, and Peter Van Orman, Asst. Attys. Gen., Phoenix, and Sidney Wolitzky, Law Student, University of Arizona, for appellee.

Nile B. Smith, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from conviction by a jury of two counts of assault with a deadly weapon, a gun, § 13–249, subsecs. A and B A.R.S., and concurrent sentences on each count of not less than ten nor more than fifteen years in the Arizona State Prison.

We are asked to answer four questions on appeal:

1.  Was it error for the trial court to allow a witness not endorsed on the information to testify?

2.  Did the trial court err in denying defense motion for mistrial after a State witness on cross-examination mentioned specific acts of defendant's past misconduct?

3.  Was it error for the court not to instruct the jury that an accomplice's testimony must be corroborated?

4.  Was it error for the court to give an instruction on flight?

The facts necessary for a determination of this appeal are as follows. In 1969, Bobby Lee Brewer left Arizona with Terry ———, age 14. She, at least, expected to get married and they cohabited in Texas where she became pregnant by Brewer. Both returned to Arizona where the baby was born. Terry and Brewer then left for Oregon where they cohabited for a short time before Terry, again pregnant, returned to Arizona and lived with her stepfather and her brother.

Brewer returned to Texas where he met Patricia Felts and cohabited with her. In October of 1970 Brewer and Felts returned to Arizona with the intention of seeing Brewer's son and Felts' aunt.

On 16 October 1970, the two went to the trailer where Terry, her stepfather, and brother lived. Felts induced the brother out of the trailer, presumably to help her start her car. Brewer then confronted the brother and subsequently struck him. When the stepfather emerged from the trailer Brewer struck him also. All the witnesses except Brewer testified that the brother and stepfather were struck with a gun which Brewer had in his hand. Brewer testified that there never was a gun, that he hit the two men with his fists, and that he never intended to do any harm, especially to the stepfather who was an older man. The gun discharged during the fight and the stepfather was injured.

After the incident, Felts and Brewer immediately left the scene and returned to Texas. They traveled to Arkansas and then to Colorado where they lived under Felts' maiden name until Felts reported Brewer to the police. He was arrested and returned to Arizona on 8 December 1970.

Trial was held in May, 1971, at which time the defendant testified in his own behalf denying, contrary to the other testimony, that he had a gun. The jury returned a guilty verdict as to both counts and defendant appealed.

## TESTIMONY OF UNENDORSED WITNESS

After the jury was sworn but before the introduction of testimony, the defendant moved to exclude the testimony of Patricia Felts as not having been endorsed upon the information as required by Rule 153 of the Rules of Criminal Procedure, 17 A.R.S., in effect when this matter was commenced. There was, of course, no question that the defendant knew of her existence, and the only surprise would be the fact that she would testify at all, not having been endorsed upon the information. The trial court stated:

"THE COURT: I want the record to reflect that prior to taking any testimony from the witness Patricia Felts, we took in recess a brief period to give Mr. Aeed opportunity to talk with the witness until he was apparently satisfied he had conversed with her sufficiently at the time.

Further the record should reflect at the prior hearing, of which the Court Reporter has a record, the defendant specifically requested that the witnesses from Colorado, which would include Mrs. Felts, be brought down for the purposes of trial. He wanted them here. That was one of the reasons he was unhappy with the Public Defender's Office, as I recall. He hadn't got these witnessed down. It's really of his own initiative.

"MR. HAMMOND: That's really why the case was continued and the Public Defender's Office terminated.

"THE COURT: There is a record of the proceedings in court concerning that matter which will reflect accurately."

Rule 153, Arizona Rules of Criminal Procedure, 17 A.R.S. (1956), directs that the names of all witnesses and deponents on whose evidence the information was based and those whom the County Attorney intends to call at trial be endorsed on the information. Our Court of Appeals has stated regarding this rule:

" * * * From this rule and the cases it is apparent that before the defendant may claim error on appeal he must show:

1. That the witness was not endorsed upon the information,

2. surprise,

3. prejudice,

4. and a timely motion for continuance or objection was denied. * * *"

State v. Gaines, 6 Ariz.App. 561, 562, 435 P.2d 68, 69 (1967).

██ The name of Patricia Felts, who testified at the trial against defendant, does not appear on the information. Her testimony was certainly prejudicial to the defendant. · However, the court gave the defense an opportunity to talk with Felts before she testified, and the defense did not request a further continuance. We find no error.

## MENTION OF SPECIFIC ACTS OF PRIOR MISCONDUCT

Defendant's attorney cross-examined Patricia Felts as follows:

"Q How long did you and the defendant live together in Colorado after this all happened?

"A About a month.

"Q Did you know how it came about that the defendant was arrested?

"A Yes. He beat me up one too many times and I was tired of supporting him, and I was tired of the whole rotten mess, and I turned him in.

"Q You turned him in?

"A Yes.

\* \* \* \* \* \*

"Q You supported Mr. Brewer, did you?

"A Yes, I did.

"Q When you reported Mr. Brewer to the police you related these activities that happened out here in Arizona?

"A Yes.

"Q Along with these alleged beatings and everything?

"A I don't think I necessarily had to report the beatings. I don't believe I did. It was pretty apparent.

"Q That's why you went to the police?

"A I went to the hospital after the last beating, and I turned him in there at the hospital, and the Sheriff's Department came out and picked me up, and I told them he was wanted—a wanted criminal.

"Q In Arizona?

"A In Arizona.

"Q You did this to hurt the man?

"A Pardon?

"Q You did it to hurt him?

"A No, I did it because I was scared to death. The night before he had a rifle at my head and a switchblade at my back and I was scared, and I didn't want to live like that."

The defendant then moved for a mistrial which was denied, but the jury was instructed to ignore the statement.

██ This court has consistently held that a witness may not be impeached by specific acts of misconduct not amounting to a felony conviction. State v. Johnson, 106 Ariz. 539, 479 P.2d 424 (1971); State v. Johnson, 94 Ariz. 303, 383 P.2d 862 (1963). And in the cases of State v. Saenz, 98 Ariz. 181, 403 P.2d 280 (1965) and State v. Smith, 96 Ariz. 150, 393 P.2d 251 (1964), we indicated that even if the "door is opened" by defense counsel the showing of specific acts of misconduct which are not sustained by conviction is both prejudicial and reversible. We believe that these two cases may be distinguished from the instant case. First in Smith and Saenz, the witnesses who made the unresponsive and damaging answers to defendant's cross-examination were police officers and in a position to know of the damaging effect of the volunteered testimony. In Saenz we stated:

"We note that the same narcotics agent, Officer Madrid, on cross examination in State v. Ybarra, 97 Ariz. 200, 398 P.2d 905 used language which tended to link the defendant to a different crime from that charged. We found this insufficient in that case to constitute reversible error because no objection or motion to strike was made. However, it is noteworthy that this veteran officer, by continuing to testify to matters which could be properly subject to objection as inadmissible and highly prejudicial, has failed to heed the admonition given in Kellington. Such conduct, if persisted in, may well result in reversible error where none would otherwise exist."

State v. Saenz, supra, 98 Ariz. at 184–185, 403 P.2d at 282.

Also in Smith, supra, we found that the defendant did not open the door, but that it was the officer who injected the prejudicial testimony into the proceedings during cross-examination and further that the State then emphasized the evidence on re-direct examination.

But we believe there is another reason why there was no error in the instant case. Unlike the situation in Saenz, where the witness's response bore no relationship to the question asked, defense counsel in the instant case elicited the response about which defendant complains. It is apparent from the questions leading up to the answer that defense counsel was approaching dangerous ground. The defendant persisted in pursuing the question after the door had been partially opened. He got the result he asked for from a hostile witness. There was no evidence of misconduct on the part of the State such as failure to adequately warn the witness not to give this testimony. We find no error.

### CORROBORATION OF ACCOMPLICE'S TESTIMONY

Patricia Felts testified in response to a subpoena and was granted immunity before her testimony was taken. She testified that she and Brewer came to Chandler because the defendant " * * * wanted to get his boy and I wanted to see an aunt I have out here." They drove to Arizona from Odessa, Texas, in the witness Felts' car. She testified that they looked all day in the area for the place where the boy was living. The defendant Brewer had the witness Felts go to the house and ask directions in order that she might ascertain who was in the house at the time. She stated that the defendant was concerned where the brother of his ex-wife was as he was afraid of having trouble with him. They drove back to the house where defendant had her "go back up to the house and say I had car trouble and draw whoever—if her brother Ted was there, that he would come out and help fix the car and

then he would be out of the house." They drove back to the house and at this time the defendant took a gun out of the glove compartment. She further testified:

"Q  Did you have any conversation with Mr. Brewer when you saw that the gun was being removed from the car?

"A  Yes. We talked about whether it was wise to have the gun and he said he was afraid that maybe someone in the house would have some kind of weapon, and that he might need to defend himself."

She knocked on the door and after enticing Ted Phillips out of the house, the fight commenced. On cross-examination she said:

"Q  On the way to Arizona, specifically on the 15th of October, and, I guess, the 16th, did Mr. Brewer say anything or give you any inclination he was going to perform any type of physical violence while he was visiting with the child or his mother?

"A  No."

The evidence does not indicate that the witness Felts knew of the defendant's intention and knowingly aided him in the commission of that offense. We have stated:

" * * * The test of whether or not one is an accomplice is whether he could be informed against for the same crime of which the defendant is accused. * * * " State v. Thomas, 79 Ariz. 355, 358, 290 P.2d 470, 472 (1955).

However, our court has stated:

" * * * It is the announced rule in Arizona that only where the evidence is clear and undisputed that a witness is not an accomplice is it proper for the court to fail to submit the question of whether the testimony of the accomplice has been corroborated. State v. Gutierrez, 81 Ariz. 377, 306 P.2d 634.

"In the instant case, the court below failed to submit any instruction whatsoever concerning the necessity for cor-

roboration of the testimony of the complaining witness. * * * Failure to instruct the jury on the applicable principles of law concerning the necessity for corroboration of the testimony of the accomplice even though not requested is reversible error, People v. Dobkin, 74 Cal.App.2d 269, 168 P.2d 729, and requires that the conviction on the second count of the information be set aside." State v. Howard, 97 Ariz. 339, 343, 400 P.2d 332, 335 (1965).

■ In the instant case while it is questionable whether or not the witness Felts was an accomplice under our statutes, see State v. Fassler, 7 Ariz.App. 248, 438 P.2d 317 (1968), the record clearly indicates more than ample corroboration to satisfy our statute, particularly the testimony of the two victims who knew the defendant and the mother of the defendant's son who observed the assault.

The defense did not request that the trial court give a corroboration of an accomplice instruction and none was given sua sponte which the defendant on appeal claims as error. Previous case law of this court would make it reversible error for the trial court not to sua sponte instruct the jury on the applicable principles of law concerning the necessity for corroboration of the testimony of an accomplice, even though not requested.

■ We believe that the facts in the instant case amply demonstrate reasons why this previous rule of ours should be abrogated. Where the evidence is such that there is some doubt as to whether the testimony of an accomplice has been corroborated then the instruction must be given. However, where the evidence of corroboration is overwhelming and the defendant does not request a corroboration of accomplice instruction, the giving of such an instruction on the courts' own motion is not mandated by our statute and the failure to give such an instruction should not be considered fundamental error. The previous opinions of this court in State v. Howard, supra, and others stating that the failure to instruct the jury on the applicability of "principles of law concerning the necessity for corroboration of the testimony of the accomplice even though not requested is reversible error" are by this opinion modified.

## INSTRUCTION ON FLIGHT

■ After the fight, defendant returned to Texas, then went to Arkansas, and then to Colorado all within a month's time. While in Colorado, the defendant lived under an assumed name. Patricia Felts' maiden name.

We have stated:

"In determining whether an instruction on flight is warranted by the evidence, this court has followed the test laid down in State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), rev'd on other grounds, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041. There we stated that ordinarily, unless the flight be upon immediate pursuit, it is necessary to establish some concealment or attempted concealment on the part of the accused in order to constitute flight." State v. Bailey, 107 Ariz. 451, 452, 489 P.2d 261, 262 (1971).

In the instant case, in addition to immediately leaving the State, defendant "hid out" under another name and we believe the facts supported the flight instruction.

Judgments affirmed.

HAYS, C. J., and STEVENS, Court of Appeals Judge, concur.