599 P.2d 754

**STATE of Arizona, Appellee,**

v.

**Edward Lee LAWRENCE, Appellant.**

No. 3342–2.

Supreme Court of Arizona,
En Banc.

July 5, 1979.

Rehearing Denied Sept. 6, 1979.

Bruce E. Babbitt, Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

The appellant, Edward Lee Lawrence, was convicted by a jury of second-degree murder in 1975. On petition for post-conviction relief, appellant was granted a new trial. That also resulted in a conviction for second-degree murder. He was subsequently sentenced to a term of fifteen years to life. We have jurisdiction pursuant to A.R.S. § 13–4031 and art. 6, § 5 of the Arizona Constitution.

Appellant makes the following contentions:

1. It was error to deny a mistrial based on previously undisclosed statements by a witness and on a reference by her to a prior bad act.

2. The trial court should have granted a mistrial when Deputy Balian mentioned the word "convicted."

3. Defendant was entitled to a mistrial in view of references to previous trials by two witnesses.

4. Defendant was denied his constitutional right to be present at all stages of the trial when the judge formulated written answers to questions from the jury in the absence of defendant.

5. The trial judge improperly shifted the burden of proof to appellant by emphasizing the word "may" in response to a jury question concerning malice.

6. There was insufficient evidence to support the verdict.

Appellant's first assignment of error deals with three statements made by a witness in the course of the second trial. Appellant maintains that her answer "[a]bout stealing a car" in response to a question from the prosecutor is grounds for a mistrial. It is appellant's contention that this reference constitutes evidence of a prior offense and is highly prejudicial. We do not agree. To state simply that someone talked about stealing a car does not mean that any offense was in fact committed. The witness said nothing further about a car and did not state that defendant had stolen a car. The trial court properly and strongly admonished the jury to disregard the comment and asked defense counsel if they had any suggestions as to how he could make a more emphatic admonition. Defense counsel answered in the negative. No further questions regarding the car were asked of the witness in the presence of the jury.

Appellant cites *State v. Kellington*, 93 Ariz. 396, 381 P.2d 215 (1963), as mandating reversal under these circumstances. *Kellington* involved witnesses who related a defendant's statements to the effect that he had been *convicted* of burglary. The witnesses were police officers and the court stated that they should have been aware of the prejudicial effect of such testimony.

The instant case is clearly distinguishable in that the witness did not allege a conviction, nor even that a crime had in fact been committed. *See State v. Sanchez*, 116 Ariz. 118, 568 P.2d 425 (1977). A mistrial was properly denied.

Appellant argues that a mistrial was the only appropriate sanction for the prosecution's failure to disclose two statements by a witness. Specifically, appellant claims that he had no knowledge that the witness was going to testify that the defendant had told her he had just come from the home of the victim and that he had just killed somebody. Initially we note that appellant's objection to these two statements was not timely. The statements to which appellant objected on the basis of lack of disclosure were made before the witness referred to the car, but defense counsel objected at that point only to the comment concerning the car. It was not until after recross-examination that defense counsel raised an objection to the statements not previously disclosed by the prosecutor. The prosecutor explained that he had not deliberately withheld the statements but had simply forgotten about them since he had obtained them only a few days before trial. Upon learning this, the court allowed the defense four days in which to interview the witness and attempt to impeach her. Appellant concedes that this was within the discretion of the trial judge under Arizona Rules of Criminal Procedure, rule 15.7, but that the trial court abused its discretion because defense had insufficient time to rebut these statements.

■ This court has consistently held that the nature and imposition of sanctions for violation of discovery rules are within the sound discretion of the trial court and will not be disturbed unless defendant can show prejudice. *State v. Hunt*, 118 Ariz. 431, 434, 577 P.2d 717, 720 (1978); *State v. Ramirez*, 116 Ariz. 259, 265, 569 P.2d 201, 207 (1977); *State v. Clark*, 112 Ariz. 493, 543 P.2d 1122 (1975). No prejudice has been shown here.

■ Next, appellant asserts that a mistrial should have been granted because of the following exchange between Deputy Balian, the state's witness, and defense counsel:

Q. When you found the ammunition, as you stated, did you ask him if he had a revolver?

A. Yes, I did.

Q. What was his answer to that?

A. He said that he did not have a revolver. He wouldn't carry one because he was a convicted—do you want me to go through with this or what?

Appellant cites *State v. Green*, 110 Ariz. 293, 518 P.2d 116 (1974), as supporting his contention that a mistrial should have been granted.

*Green* dealt with an entrapment defense to a narcotics charge. Defense counsel was relying on the grand jury testimony of the state's witness when on cross-examination the witness responded that defendant was known as a dealer in narcotics. The Arizona Supreme Court found the remark highly prejudicial with a substantial possibility of having influenced the guilty verdict returned by the jury. *Id.* at 295, 518 P.2d at 118.

Immediately we note two significant distinctions between *Green* and the instant case: Defense counsel in *Green* had not previously examined the witness and was relying *solely* on testimony given before the grand jury; defendant was charged with the sale of narcotics and the witness' statement bore directly on that charge and the defense of entrapment.

Defense counsel in the instant case had extensively examined the witness in a previous trial and the mention of the word

"convicted," with nothing more, does not refer to any specific offense. In considering this point, we note that defense counsel conceded during the hearing on a motion for mistrial that he had not asked the witness precisely the same question at the first trial.

During the first trial the prosecutor questioned the witness in the following manner:

Q. Did you have occasion to inquire of the defendant if he had a pistol of any kind to go along with this ammunition?

A. I . . . asked if he had a revolver and he said "No." A revolver was in the possession of the person who drove the car and fled from the scene.

On cross-examination the following exchange occurred between defense counsel and the state's witness:

Q. I believe that you have indicated that as a result of finding the shells . . you inquired if he had possession of a revolver that would go along with the shells?

A. Yes, this was before I put him in the car.

Q. And he said that, in fact, no, the driver had possession of the weapon?

A. Yes. He said the driver had possession of the weapon.

At the first trial, defense counsel asked a narrow, leading question suggesting the answer he wanted from the witness. When we contrast this carefully-framed question with the broad, open-ended inquiry at the second trial—"[w]hat was his answer to that"?—it is evident that defense counsel invited error by venturing onto dangerous ground and carelessly framing a question that invited the witness to relate the totality of defendant's response. Conversely, the state did not even broach the subject of a revolver at the second trial.

We do not find *Green* apposite to this case. The court in *Green* recognized an exception when the remark was deliberately or negligently elicited by defense counsel. *Id.* at 294, 518 P.2d at 117. We find the facts here closer to those in *State v. Brewer*, 110 Ariz. 12, 514 P.2d 1008 (1973), where, discussing prior bad acts mentioned by the state's witness, this court said:

[D]efense counsel in the instant case elicited the response about which defendant complains. It is apparent from the questions leading up to the answer that defense counsel was approaching dangerous ground. . . . *He got the result he asked for from a hostile witness.* (Emphasis added.) *Id.* at 16, 514 P.2d at 1012.

In *State v. Gallegos*, 99 Ariz. 168, 407 P.2d 752 (1965), the response of a witness to defense counsel's question clearly implicated defendant as a marijuana peddler. There, we discussed the problem of inadmissible but responsive testimony elicited by defense counsel:

In *State v. Gortarez*, 96 Ariz. 206, 393 P.2d 670, we held that *where otherwise inadmissible testimony was given and was called for by the question of defense counsel, it would not be considered as reversible error even if prejudicial. . . . If the court concluded that the State's witness deliberately introduced the prejudicial matter of other criminal offenses, under the repeated holdings of this Court it had no discretion but to direct a mistrial. On the other hand, if the answer was responsive to a question asked by defense counsel, the court should deny the application for mistrial. . . . In* this instance, the trial judge apparently resolved this in favor of the State's witness. . . . We will not disturb this discretion unless it clearly appears, 'which it does not here, that the trial judge erred and hence was wrong. (Emphasis added.) *Id.* at 173, 407 P.2d at 755.

It is clear from the record that the trial court determined that Deputy Balian's comment—which he himself interrupted before finishing—was not deliberate but merely responsive to a broad question propounded by defense counsel, who had ample warning he was in a dangerous area. This was invited error and appellant may not benefit therefrom on appeal. *State v. Stoneman*, 115 Ariz. 594, 566 P.2d 1340 (1977); *State v.*

*Fish*, 109 Ariz. 219, 508 P.2d 49 (1973); *State v. Maggard*, 104 Ariz. 462, 455 P.2d 259 (1969).

We now address the issue of whether a mistrial should have been granted because of statements by the former prosecutor at the second trial and by the witness, defendant's sister.

■ First, we consider the comment by the former prosecutor during cross-examination by the prosecutor at the second trial:

Q. And I didn't know anything about the case at all?

A. You had no knowledge of the case at that time. You weren't assigned to it at that time.

Q. You took the case alone for trial?

A. Yes.

There was no reference to the outcome of the trial or to conviction. We find no error.

■ Defense counsel conducted lengthy cross-examination of the witness during which he repeatedly pressed her concerning the first time she had recalled certain statements attributed to the defendant:

Q. Do you recall when you talked with Mr. Hossack of the County Attorney's office relative to the, you know, to the phone conversations?

A. I don't know what day it was. I know it was before the trial.

Q. *And you previously testified in sworn testimony with regard to these statements* that were made to you by your brother. At that time you *previously* stated as to statements your brother made to you that evening on the phone. (Emphasis added.)

A. In the last trial. Yes.

Defense counsel made no motion to strike the remarks above and did not move for a mistrial until the next day. Denying the mistrial, the judge strongly admonished the jury to disregard the remarks and repeated the admonition during a cautionary instruction to the jury before they began deliberations.

Analysis of the questions and responses reveals that the witness did not specifically refer to a *previous* trial in her first response. Indeed, it is clear that defense counsel emphasized that there had been a prior trial by stating: "And you previously testified in sworn testimony with regard to these statements . . . ." That comment dispelled all ambiguity as to whether there had been a prior trial. Having entered upon this dangerous terrain, defense counsel persisted in probing the witness' memory regarding a sequence of events, thereby risking the possibility of further references to a previous trial. There was no mention made of the outcome of the first trial.

We are aware of no authority in this jurisdiction supportive of the contention that mere mention of a previous trial mandates reversal on appeal. We believe that defense counsel invited error by deliberately and persistently treading dangerous ground. Since counsel did not timely object and in fact emphasized that there had been a previous trial by his line of questioning, he cannot now be heard to complain of answers responsive to his questions. *Gallegos, supra.*

■ Appellant also complains that the trial judge should not have sent written replies to the jury concerning two questions of law in the absence of defendant. The record shows that the judge summoned the prosecutor and defense counsel to his chambers, informed them of the jury's requested clarification of instructions, and allowed them to voice their objections. The record does not state that defendant was present in chambers. The written clarification was then sent to the jurors.

We find that appellant's reliance on *State v. Robin*, 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Werring*, 111 Ariz. 68, 523 P.2d 499 (1974); and *State v. Burnetts*, 80 Ariz. 208, 295 P.2d 377 (1956), is misplaced. In *Robin* the jury sent the judge questions of fact, upon which he commented from his notes and recollection of relevant testimony. *Werring* involved a judge who refused to let defense counsel see written questions from the jury and later responded to oral questions in the jury room. The objectiona-

ble conduct in *Burnetts* stemmed from the judge's standing at the door to the jury room and answering an oral question with neither defendant nor his counsel present. The trial judge in the instant case summoned the state and defense counsel, who were then permitted to express any objections to the proposed instructions. At no time did the judge physically intrude into the jury room or communicate with the jurors on questions of fact.

Relying on *State v. Perez*, 115 Ariz. 30, 563 P.2d 285 (1977), appellant contends that a defendant's right to be present at all stages of the trial is of constitutional magnitude, that there is no proof of defendant's voluntary intelligent waiver, and that as a result reversal is necessary.

When we focus upon the particular circumstances of. *Perez*, the following facts emerge as very significant: The jury wanted to hear testimony that dealt with forced, deviate sexual acts allegedly perpetrated on the victim. The record reflected no proof that defendant had personally and voluntarily waived his right to be present. This court in *Perez* was especially troubled by what difference defendant's presence might have made if the jury had been able to observe defendant while the damaging testimony was being read. Citing *State v. Armenta*, 112 Ariz. 352, 541 P.2d 1154 (1975), and conceding that the right to be present is of constitutional dimension, this court found there was insufficient proof of defendant's intent to waive his right. We were not willing to say, under the circumstances of *Perez*, that defendant's absence was harmless error.

Article 6, § 27 of the Arizona Constitution in pertinent part states: "No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." The Arizona Supreme Court has consistently applied the doctrine of harmless error. In *State v. Bustamante*, 103 Ariz. 551, 447 P.2d 243 (1968), this court held that, without a showing of prejudice, there was no reversible error in playing taped instructions to the jury in defendant's absence. *Id.* at 553–54, 447 P.2d at 245–46. Concluding that reversal was not mandated, the court stated: "To hold otherwise would be to exalt form over substance . . . ." *Id.* at 554, 447 P.2d at 246.[1] *Accord, State v. Davis*, 117 Ariz. 5, 570 P.2d 776 (App.1977) (written answers to jury's questions on matters of law without notice to the defendant or his counsel not reversible error); *State v. Savoy*, 109 Ariz. 531, 514 P.2d 452 (1973) (playing taped instructions to jury in absence of defendant not reversible error); *State v. Cufio*, 12 Ariz.App. 461, 471 P.2d 763 (1970), (taped instructions given to jury in absence of defendant not reversible error).

---

1. Bustamante sought federal habeas corpus relief, which was denied by the District Court. On appeal, however, the Ninth Circuit held that, although the absence of defendant during the playing of taped instructions to the jury might have been harmless error, the record did not clearly establish that fact. The Ninth Circuit was disturbed by the fact that the trial judge who taped the instructions in presence of defense counsel was not present when the taped instructions were played to the jury. In addition, the record did not indicate whether all members of the jury were present, or what remarks, if any, were made by the new judge. Consequently, the case was remanded in order to resolve these troublesome points and to establish beyond a reasonable doubt that the error was harmless. *Bustamante v. Eyman*, 456 F.2d 269 (9th Cir. 1972).

On remand the District Court held an evidentiary hearing, which established that all members of the jury were present, the instructions were accurately and audibly replayed, and that the new judge made no comments to the jury other than courtroom amenities such as "Be seated." Based on this finding, the District Court ruled that defendant's absence was harmless error. The Ninth Circuit affirmed in *Bustamante v. Cardwell*, 497 F.2d 556 (9th Cir. 1974).

The case before us presents none of the issues raised in *Bustamante, supra.* Defense counsel was present in chambers, tapes were not involved, and there was no change of judge. *Accord, Polizzi v. United States*, 550 F.2d 1133 (9th Cir. 1976); *United States V. Arriagada*, 451 F.2d 487 (4th Cir. 1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972); *Ware v. United States*, 376 F.2d 717 (7th Cir. 1967).

We are satisfied from the record before us that defense counsel was present in chambers and had the opportunity to hear the proposed instructions. The jury instructions correctly stated the law and dealt strictly with matters of law. We cannot conceive, nor does appellant specify, how defendant's absence affected any substantial constitutional rights. Accordingly, we hold that the error was harmless.

■ Appellant also takes issue with the nature of certain jury instructions. During deliberations the jury sent a note to the judge with the following questions:

1) Is it possible to commit a crime with a gun and it not be "malice"?
2) Can you commit "murder, second degree" with a gun without "malice"?

The court responded in the following manner:

The answer to your first question is as follows: My instruction number 13 defining murder says in part "if you determine that the defendant used a deadly weapon in the killing you *may* find malice." This means that proof of the killing accomplished through the use of a gun *may* indicate the required "malice" necessary to prove murder in one of two ways: First, it *may* indicate a deliberate intention to kill. Second, it *may* indicate a reckless disregard for human life. (Emphasis added by the court.)

The answer to your second question is as follows: "No."

Appellant argues that the detailed explanation of "malice" in the first answer, plus the emphasis on the word "may," impermissibly shifted the burden to defendant to prove that he did not have malice. Appellant further contends that the court should simply have answered "yes" to the first question because the answer to the second question was merely "no."

If the judge had answered with a simple "yes" to the first question, that would have given no guidance whatsoever to the jurors as to what the law considers malice or under what circumstances it might be inferred. Indeed, the use of "may" put the matter precisely where it should have been—within the province of the jury as a question of fact. "May" always indicates possibility and is never mandatory. The jury could thus understand that the use of a gun did not irrebuttably establish malice.

Conversely, it was proper to answer "no" without qualification to the second question because it was impossible to find defendant guilty of second-degree murder without malice and no elaboration was necessary.

Since the trial court properly instructed the jury as to second-degree murder, voluntary and involuntary manslaughter, and malice, we find no merit in this argument.

■ Finally, appellant urges that there was insufficient evidence to support a verdict of second-degree murder. It is well settled in Arizona that reversible error occurs only when there is a complete absence of probative facts to support the verdict. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). In reviewing the sufficiency of the evidence, the court will consider evidence in the light most favorable to the state and all reasonable inferences will be resolved against the defendant. *State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973). What appellant's claim really amounts to is a disagreement with the jury over the finding of malice necessary to sustain a verdict of second-degree murder. Appellant appears to be arguing that the jury should have believed the defense of intoxication, which would have negated the requisite malice.

■ The question of intoxication as a defense is a factual one to be determined by the jury. *State v. Magby*, 113 Ariz. 345, 353, 554 P.2d 1272, 1280 (1976); *State v. Duke*, 110 Ariz. 320, 326, 518 P.2d 570, 576 (1974). The trial court accurately instructed the jury regarding intoxication as well as self-defense. The jury obviously did not believe that defendant was so intoxicated as to preclude malice.

■ The state presented substantial evidence to sustain the verdict, including statements by the defendant that he did not like his girlfriend spending so much time with the victim, that he had killed the victim,

and the fact that the murder weapon was fired twice during the alleged struggle between defendant and the victim.

It has long been the law in Arizona that on appeal the Supreme Court will not substitute its judgment for that of the jury and will reverse only if there is a complete lack of probative facts to support the verdict. *State v. Pittman*, 118 Ariz. 71, 75, 574 P.2d 1290, 1294 (1978); *Childs, supra; State v. Barnett*, 112 Ariz. 210, 540 P.2d 682 (1975). Considering all the evidence, we find that there was substantial evidence to support the verdict. We have thoroughly reviewed the record pursuant to A.R.S. § 13–4035 and find no fundamental error. The judgment of conviction and the sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.