400 P.2d 580

**STATE of Arizona, Appellee,**

v.

**Bobby Joe Frederick FARMER, Appellant.**

**No. 1373.**

Supreme Court of Arizona.

En Banc.

March 31, 1965.

Robert W. Pickrell, Atty. Gen., William E. Eubank, Chief Asst. Atty. Gen., Phoenix, for appellee.

. Patrick E. Eldridge, Ronald G. Cooley, Phoenix, for appellant.

LOCKWOOD, Chief Justice.

Defendant, Bobby Joe Frederick Farmer, appeals his conviction of illegal possession of marijuana in violation of A.R.S. § 36–1002.05.

The material facts on appeal are as fol-· lows: Defendant was stopped by two police

officers at approximately 4:40 A.M. on April 2, 1963, as he was leaving Helsing's Restaurant in Phoenix. After making inquiries as to his identity, the officers proceeded with the defendant to the latter's car which was parked in the parking lot of the restaurant. Upon searching the defendant's car, the officers discovered a package of marijuana and placed the defendant under arrest.

On appeal, the defendant contends that the trial court erred in denying his motion for a new trial and asserts two propositions of law in support of the claimed error. His first contention is that the police officers conducted an illegal search and seizure of his car and consequently the evidence seized should have been excluded from evidence. The State contends that the search was not illegal because the defendant consented to it.

■ This Court has recently held that the constitutional protection against unreasonable search may be waived by unequivocal words or conduct expressing consent. State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963). This view is not in conflict with that of the United States Supreme Court in administering the Fourth Amendment protection against unreasonable searches and seizures. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946).

In the present case a hearing was held by the court in the absence of the jury on defendant's motion to suppress. At this hearing, Officer Chestnut, one of the arresting officers, testified as follows:

"Q. Now, Officer, what were your exact words to the defendant on this question?

"A. I asked him, 'Bob, do you mind if we look in your trunk of the vehicle?'

"Q. And what did he say?

"A. He said, 'No, I do not mind.'

"Q. He said, 'No, I do not mind.'?

"A. As I recall.

"Q. Those were his exact words?

"A. As I recall.

"Q. All right. After you went around —After you finished searching the trunk of the vehicle, you went around to the passenger side of the vehicle, is that correct?

"A. That is—No, sir.

"Q. All right. What did you do?

"A. Walked around from the trunk of the vehicle to the driver's side of the vehicle.

"Q. All right. Then what did you do?

"A. I then—I didn't do anything.

"Q. Did you ask him—

"A. I asked Mr. Farmer, as I recall it, while we were standing by the trunk

of the door if he would mind if we looked in the driver's compartment.

"Q. Do you recall your exact words?

"A. I believe I said just about the same thing. I said 'Bob, do you mind if we look in the inside of the vehicle,' referring to the driver's compartment.

"Q. Was he under arrest at this time?

"A. No, he was not.

"Q. All right. Did he make any reply to that request of yours?

"A. As I recall—As I recall, I believe he said, 'No, I don't mind.' "

■ Even though the defendant denied ever having said such a thing, we are of the opinion that the testimony quoted above is sufficient to warrant a conclusion by the trial judge that the defendant consented to the otherwise illegal search. This evidence is similar to that in State v. Tigue, supra, where we found consent evidenced by the following testimony:

" 'I talked with him for awhile. We just visited and then I asked him if he had anything on him that he shouldn't have, and he told me *no, he didn't—go ahead—and held his arms up.* And at that time I searched him and found the monies.' " (Emphasis in the original.) 95 Ariz. at 48, 386 P.2d at 405.

Accordingly, we hold that the defendant's first contention is without merit because the trial court found that the defendant unequivocally consented to the search.

Defendant next contends that prejudicial error was committed when a police officer stated that he had seen the defendant's picture in the police files. The defendant refers us to State v. Jacobs, 94 Ariz. 211, 382 P.2d 683 (1963), wherein we held that reference to a police photograph of a defendant by a state's witness in a criminal trial was prejudicial error as implying a prior criminal conviction. The State contends, however, that the defense "opened the door" to the reference to police photographs by impeaching the state's witness on the basis of an allegedly prior inconsistent statement made by the witness at the preliminary hearing.

■ This Court has repeatedly held that a party may not invite error at the trial and then assign it as error on appeal. State v. Gortarez, 96 Ariz. 206, 393 P.2d 670 (1964); State v. Paramo, 92 Ariz. 290, 376 P.2d 554 (1962).

The testimony about which defendant complains developed at the trial, beginning with cross-examination of Officer Chestnut by defense counsel, as follows:

"Q. Now you say the only reason you stopped the defendant to begin with was because he fit the general description of a robbery suspect?

"A. That is correct, sir.

"Q. And no other reason?

"A. If the Court wishes me to answer the question—It might be considered to be prejudicial to the defendant.

\* \* \* \* \* \*

"Q. Again recalling your attention to the date of April 15, 1963, in the Justice Court of the Northeast Phoenix Precinct, you did testify under oath at that time, did you not, Officer?

"A. I did, Sir.

"Q. Were the following questions asked by Mr. Miller and were the following answers given by you?

\* \* \* \* \* \*

"Q. 'Q. Then you didn't know who he was before you stopped him?

" 'A. I stopped the individual that looks something like a gentleman that I had heard called Robert Farmer.

" 'Q. Why did you stop him?

" 'A. Because he looked something like a gentleman by the name of Robert Farmer, and he also fit the description of an armed robbery suspect that we had earlier in the evening at Wickiup Liquors.' "

"Were those questions asked and were those answers given by you on that date?

"A. That is correct, sir.

"[Defense Counsel]: No further questions.

"THE COURT: Redirect?

REDIRECT EXAMINATION

"[Prosecuting Attorney]:

"Q. Can you explain the last answer, sir, that you made at the preliminary hearing to the court and jury today? Yes or no?

"A. Yes.

"Q. Please do.

"A. I have observed Mr. Farmer's picture previously in police department files. Also—

"[Defense Attorney]: I object to any further testimony on this [sic] part. He has answered the question.

"THE COURT: The objection will be sustained.

"[Prosecuting Attorney]: Withdraw the further question on that avenue."

Defense counsel had adequate notice of the nature of the answer which would be forthcoming from the officer. This notice is indicated by the warning response the officer made to a question put to him on cross-examination as quoted above and also by the officer's testimony at the preliminary hearing preceding the portion quoted by defense counsel as an allegedly prior inconsistent statement. The pertinent testimony at the preliminary hearing proceeded as follows:

"Q. Had you seen him before the defendant—have you seen the defendant before that day, or that morning?

"A. No, sir, I had not.

"Q. Do you know who he was before that morning?

"A. I did.

"Q. How did you know?

"A. I observed his picture.

"Q. Where?

"A. Police files.

"Q. And you knew you were stopping Bobby Joe Farmer?

"A. No, sir.

"Q. Then you didn't know who he was before you stopped him?

"A. I stopped the individual that looks something like a gentleman that I had heard called Robert Farmer.

"Q. Why did you stop him?

"A. Because he looked something like a gentleman by the name of Robert Farmer, and he also fit the description of an armed robbery suspect that we had earlier in the evening at Wickiup Liquors."

A situation analogous to the one presented here occurred in Riley v. State, 50 Ariz. 442, 73 P.2d 96 (1937). In Riley, defense counsel objected to the admission of testimony on redirect examination which amounted to an attack upon the character of the defendant as being a turbulent and violent man, when his character was not a proper issue in the case. We noted that:

"[h]ad the evidence offered in rebuttal been offered in the examination in chief and admitted, it would, of course, have been error of a grievous kind. It appears, however, that the matter was first brought out by counsel for the defendant in cross-examination. Kellner [the state's witness] was asked by counsel for defendant as to his reason for believing that Riley was going to throw anyone out of the restaurant. It seems to us that counsel should have realized that such a question opened wide the door for evidence of the very character to which he now objects, and that, when the witness gave the answer, 'That would have to take in a lot of things and maybe I am not allowed to explain it,' the danger signal was plain. * * * It is the rule of law that, if counsel for a defendant on cross-examination deliberately injects improper evidence into the case, he may not be heard to complain because in rebuttal counsel for the state enters at the door which has been opened wide by the defendant." 50 Ariz. at 450–451, 73 P.2d at 100–101.

■ In addition to the analogy of the Riley case, the general rule is that the impeached witness may endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances

**354**

would naturally remove it. Affronti v. United States, 145 F.2d 3 (8th Cir. 1944); 3 Wigmore, Evidence §§ 1044, 1045 (3d ed. 1940). To preclude the State from rehabilitating one of its impeached witnesses by this mode of rehabilitation would allow the defendant an unwarranted advantage in impeaching a witness with an assurance that his credibility would remain impaired.

 Where the defense counsel has notice of the nature of the rehabilitating evidence, as he did here, the initial choice is with him. He can choose not to impeach the credibility of a state's witness on the basis of prior inconsistent statements, but if he elects to do so, he cannot complain when an alleged inconsistency is explained away in a manner involving prior crime evidence about which he had notice.

What we have said above does not conflict with the recent cases of State v. Smith, 96 Ariz. 150, 393 P.2d 251 (1964) and State v. Hunt, 91 Ariz. 149, 370 P.2d 642 (1962) where we held that the door had not been opened to prior crime evidence. In Smith, supra, the prejudicial testimony was injected into the case by a witness in an unresponsive answer to a question put to him on cross-examination by defense counsel. In Hunt, supra, codefendant's counsel asked the question resulting in the prior crime testimony. In neither case did defense counsel have notice of the nature of the response and hence the initial choice was not with him.

Finally, defendant contends that the verdict was contrary to the weight of the evidence. We have reviewed the record and find that the only serious contradiction offered by the defense was on the issue of consent to the search of defendant's car. The testimony of the police officers and the introduction of the package of marijuana into evidence were sufficient to enable a jury to reach a verdict of guilty.

Judgment affirmed.

STRUCKMEYER, V. C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concur.