**STATE of Missouri, Plaintiff-Respondent,**

v.

**Joseph Walter CHARLES, Defendant-Appellant.**

**No. 35774.**

Missouri Court of Appeals, St. Louis District, Division One.

June 17, 1975.

Charles D. Kitchin, Public Defender, John F. Bauer, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen.; K. Preston Dean, II, Donald R. Bird, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., J. Paul Allred, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Murder prosecution. Defendant was convicted by a jury of murder in the second degree and sentenced to 15 years imprisonment under the Second Offender Act (Section 556.280 RSMo 1969, V.A.M.S.). Defendant appeals.

The state's case in chief was made by the testimony of one Elverd Callwell, and is as follows: At approximately 10:30 a. m., February 3, 1973, a drinking spree began at the Callwell home, in St. Louis, Missouri.

Present at the home during the affair were Callwell, his wife, a friend who left before the shooting, the defendant and Donald Gillard, the deceased. During the day, the group consumed about four fifths of gin and 25 to 30 cans of beer. Everyone was "high" but not drunk. Around 4:30 in the afternoon Gillard asked and later demanded that the defendant loan Gillard ten dollars. About this time witness Callwell got up and left the room.

On his return to the room witness Callwell found both defendant and Gillard on their feet arguing about the ten dollars. Gillard threatened to take the money away from defendant and advanced towards him. Witness Callwell then grabbed Gillard by the arm and attempted to escort Gillard out the back door, ostensibly to avoid an altercation. At the door, however, Gillard swung around and started back to the living room. When Gillard was about four or five feet away defendant pulled a gun from behind his back and fired three shots at Gillard. Gillard ran out the back door. Defendant went home. Gillard was found later that day by the police about a half block from the Callwell home, and Gillard died on the way to the hospital.

Later that evening the police arrested defendant at his home. At this time defendant was intoxicated and had to be helped into the police car. Found on defendant's person was the murder weapon, a .22 caliber pistol.

The case was submitted to the jury at the close of the state's evidence on instructions for murder in the second degree, manslaughter and self-defense. The jury found defendant guilty of murder in the second degree. Defendant appeals. We affirm.

The sole issue on appeal is whether the court erred in overruling defendant's objections to statements made by witness Callwell to the effect that the defendant had previously shot Callwell's son. Defendant argues that such testimony constitutes evidence of another crime and as such was inadmissible.

On direct examination witness Callwell testified for the state to the version of the facts recited earlier in this opinion. On cross-examination defendant's attorney succeeded in getting Callwell to admit making a prior inconsistent statement. This statement was made in the office of the public defender prior to trial. The substance of the statement made to the public defender was basically the same as Callwell's testimony on direct examination, except in the prior statement to the public defender Callwell described a struggle between the defendant and the victim just prior to the victim being shot by the defendant.

In order to rehabilitate the credibility of the witness the state on redirect attempted to show that Caldwell made the prior statement because he was afraid of what the defendant might do if Callwell did not change his version of the facts. In particular the state was trying to show that the defendant had threatened Callwell. During the attempt by the state to explain the reasons for the prior inconsistent statement, the following exchange took place:

"Q. (By the prosecutor) Why did you make that statement to Mr. Bauer (defendant's attorney)?

\* \* \* \* \* \*

A. (By Callwell) I was informed to make the statement just like I made it.

Q. Who told you to make the statement?

A. Charles [the defendant].

Q. Why did you do it?

A. Because he was out on bond and I didn't want to run into trouble with him, that's why.

Q. Did you have any fear of him?

A. Yeah.

Q. What was the basis for your fear? What caused your fear in other words?

A. I know he done shot people and would———"

At this point defendant's attorney objected, on the ground that such testimony constituted evidence of other crimes. The trial court sustained the objection and ordered the remark stricken. The court further instructed the jury to disregard the witness's last remark. The prosecutor attempted to argue with the court over whether such testimony was admissible, but the court said it would allow the witness to testify as to any threats that were made by the defendant but not to any other crimes committed by the defendant. A short time later the following occurred:

"Q. You were afraid of Mr. Charles?

A. Sure.

Q. What did you base your fear on?

A. I had been knowing the man for 30 years.

   *    *    *    *    *    *

Q. What did he ever say to you about this? What words did he say to you that caused fear?

MR. BAUER: I object to this line of questioning, your Honor.

THE COURT: The objection will be overruled.

Q. (By the prosecutor) You may answer.

A. He just told me and my son both, to drop the case against him when he shot my son———

MR. BAUER: I object to the part 'when he shot my son.'

THE COURT: I understand the objection and I'm overruling it."

"Q. Mr. Callwell, under oath tell this jury what you were afraid of?

A. I was afraid of getting shot. That's what I was afraid of.

Q. Have you ever seen this man shoot anybody?

MR. BAUER: Objection, that is irrelevant and immaterial.

THE COURT: I will overrule the objection.

A. I saw him shoot my son.

Q. And after he shot———

MR. BAUER: Same objection.

THE COURT: Same ruling."

Defendant concedes that the state was justified in its inquiry as to why witness Callwell made the prior inconsistent statement. Defendant further concedes that the state may even inquire as to any threats made by the defendant for the purposes of coercing witness Callwell to make a false statement. What defendant does object to were the references to the alleged shooting of Callwell's son in a prior unrelated incident.

The state's answer to this is that inasmuch as the defendant's attorney impeached the witness by proof of an inconsistent statement, it was thereafter proper to permit the state to examine the witness as to his reasons or motives in giving the prior inconsistent statement. We agree.

Here, it was the defendant who introduced this whole line of testimony by inquiring on cross-examination about the prior inconsistent statement. Defendant thus seeks to have the best of both worlds; he impeaches the witness with a prior inconsistent statement and then seeks to restrain the state's inquiry into the reasons why the witness made the prior inconsistent statement.

In *Hanger v. United States*, 398 F.2d 91 (8th Cir. 1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969), the witness also had made a prior inconsistent statement. The witness was permitted to testify to the reasons for the inconsistent statement, including his fear that defendant would beat him; threats made by defendant to the witness; and, the witness's knowledge of the defendant's character. In *Copes v. United States*, 120 U.S.App.D.C. 234, 345 F.2d 723 (1964), the defendant, on cross-examination, produced a prior inconsistent statement by the witness. The court held the introduction of such evidence

put the credibility of the witness in issue and it was permissible on redirect to inquire as to the reasons for the inconsistency. The court reasoned that the issue of credibility could not be resolved merely by a reiteration on redirect that the first testimony was true, and allowed exploration of the reasons behind the inconsistency.

The fact that the redirect examination opens the door for testimony regarding defendant's character does not detract from the fact that such testimony is introduced only to show the witness's motivation for the false statement.

We further note that the general rule allowing the witness to explain the reasons for his prior inconsistent statements has been widely adopted by the courts of various states. In *People v. Crooms,* 66 Cal. App.2d 491, 152 P.2d 533 (1944), the witness was permitted to testify on redirect examination concerning threats made by defendant which caused the witness to make the prior inconsistent statement. The court held that such explanations are proper and "appellant may not complain if testimony as to such threats may have tended to place her in an unfavorable light with the jury. Since an attempt had been made to impeach the testimony of the complaining witness by introducing previous statements inconsistent with his testimony given at the trial, it was necessary to allow the complaining witness to explain the inconsistent statements or testimony." *Crooms, supra,* at 536.

Also, in *State v. Farmer,* 97 Ariz. 348, 400 P.2d 580, 583 (banc 1965), the court had this to say about rehabilitating an impeached witness: "The general rule is that the impeached witness may endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it . . . To

preclude the State from rehabilitating one of its impeached witnesses by this mode of rehabilitation would allow the defendant an unwarranted advantage in impeaching a witness with an assurance that his [the witness's] credibility would remain impaired."

Missouri cases are in accord with this rationale and have permitted witnesses to explain their reasons for making prior inconsistent statement. *State v. Durham,* 418 S.W.2d 23, 28–29 (Mo.1967).[1] In *State v. Griffin,* 497 S.W.2d 133, 135–136 (Mo.1973), it was held that "in order to refute unfavorable inferences and to avoid the effect of the cross-examination, a witness may be asked as to his reasons for his statements on cross-examination or at other times, or for acts, omissions to act, or conduct on his part which have been brought out . . . . The scope and extent to which the redirect examination of a witness shall be permitted to go is a matter to be left largely to the sound discretion of the trial court, reviewable only for abuse."

Here, the trial court did not abuse its discretion in allowing the witness to give his reasons for making the inconsistent statement.

We believe that since defendant initiated discussion of the prior inconsistent statement, he cannot now complain when the reasons for giving the statement include evidence of other crimes by the defendant. To hold that the state may not inquire as to the basis for the witness's fears when that basis involves criminal acts of the defendant would seriously impair the rule which allows a prior inconsistent statement to be explained.

Judgment affirmed.

WEIER, P. J., and RENDLEN, J., concur.

---

1. Also see *State v. Vickers,* 209 Mo. 12, 106 S.W. 999 (1907), where the mother of a rape victim was permitted to state on redirect examination that she delayed in reporting the rape to her husband because "the child (the victim) said he (meaning defendant) will kill papa." On cross-examination the defendant brought out the fact that the mother had delayed telling her husband of the rape. The court stated that it was "perfectly competent" for the mother to make this explanation.