JEROME WEINER a/k/a Jerome Buckler Werner
*v.* STATE OF MARYLAND

[No. 1520, September Term, 1982.]

*Decided September 8, 1983.*

The cause was argued before GILBERT, C. J., and WILNER and GETTY, JJ.

*Henry J. Myerberg,* with whom were *Harold I. Glaser* and Saundra C. Rothstein on the brief, for appellant.

*William Charles Rogers, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Stephanie J. Lane, Assistant Attorney General, Kurt Schmoke, State's Attorney for Baltimore City* and *Edwin Wenck, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GETTY, J., delivered the opinion of the Court.

Appellant, Jerome Weiner, a.k.a. Jerome Buckler Werner, was indicted on January 7, 1981, in the Criminal Court of Baltimore on seven multi-count charges. The first two indictments, which are relevant in the instant case, charged the Appellant with incest, rape and carnal knowledge of Amelia Liepold, a stepdaughter of Appellant. The other indictments contained similar charges involving two younger stepchildren.

Trial commenced on July 28, 1981, before Judge Marshall A. Levin and a jury. A motion to sever the cases was granted and the State elected to proceed with the case involving Amelia Liepold, the eldest child. On August 8, the jury returned guilty verdicts on the charges of carnal knowledge

and statutory rape. The Court imposed a sentence of ten years on the carnal knowledge charge with nine years suspended and two years for statutory rape with all but one year suspended. The sentence on the statutory rape charge was to be served concurrently with the sentence for carnal knowledge.

The issues preserved for appeal are:

1. Whether the trial court abused its discretion in admitting evidence of another allegation of incest that occurred subsequent to the incident for which the Appellant was on trial?

2. Whether the trial court abused its discretion in allowing evidence in rebuttal that the State could have presented in its case in chief?

Following the granting of the motion to sever the three cases, the trial judge granted a Motion in Limine precluding the admission of any testimony relating to the Appellant's alleged illicit conduct with either of the younger children. The State then informed the court that a five year delay existed from the time that the last alleged act occurred involving Amelia, now age twenty, until she reported the act to the police. Amelia disclosed the incidents of intercourse with her stepfather following a conversation with her fifteen year old sister, Cathy, in which Amelia learned for the first time that Cathy had been subjected to similar sexual assaults by their stepfather.

The State argued that it was necessary to disclose this conversation in order to explain the delay of five years before Amelia registered any complaint, and the reasons why she eventually came forward.[1] Over strenuous objection, the trial judge permitted the victim to state the reason that she went to the police five years after the last incident involving her stepfather, and the court then gave a limiting instruction to the jury. The testimony and instruction include the following:

---

[1]. The evidence of other acts of intercourse with the younger sister, Cathy, was introduced by the State in its case in chief to explain why Amelia came forward five years after the last incident between herself and her stepfather.

Q Okay. Now, at any time up until the fall of last year did you tell anyone about what stepfather had done to you?

A No, I did not.

Q Did there come a time in the fall or more specifically October of 1980 when you did reveal?

A Yes, there was.

. . .

Q All right, now getting back to what we had just started before the bench conference, Amy, directing your attention to October of 1980, this past fall, did there come a time when you had a visit from Cathy?

A Yes, I did.

. . .

Q Go ahead

. . .

A Okay, she had walked in the door, and she looked at me, and she said, Amy, I left home. That's all she had to say to me.

Q How did she look?

A Like I did five years ago exactly.

THE COURT: . . .

OK, go ahead.

A . . . I asked her, I said did anything ever happen between you and Jerry?

Q Jerry, you mean your stepfather?

A My stepfather. Yes, that's what we call him. She said yeah. I said, what happened? Did he have intercourse with you? She said, he tried. I said, tried or did? It's two different things. She said, he did. . . . I did tell her you are not the only one. It happened to me too.

Q Is that the first time you made the revelation that anything happened to you?

A Yes.

Q Why did you then say anything?

A Because I felt that since I never had said nothing, I felt bad about it that it happened to her and I wanted to let her know she wasn't the only one and not to be scared like I was.

THE COURT: Yes, members of the jury, I have admitted the evidence of what Cathy told this witness not for the purpose of proving the truth of the matter asserted, but rather to account for her state of mind, this witness' state of mind.

The trial judge carefully considered the necessity for and probativeness of the evidence concerning the collateral criminal act alleged to have taken place against the untoward prejudice which is likely to be the consequence of its admission. In fact, the court preliminarily suggested that the State consider calling Cathy's case first to avoid the issue that is before us. The State, however, declined.

We agree that this is a close case, and we may have decided the threshold question differently. The issue, however, is whether Judge Levin's decision to permit the testimony, followed immediately by a limiting instruction, was an abuse of discretion.

The first case in Maryland to consider the issue of the admissibility of evidence of sexual acts between the accused and persons other than the victim is *Wentz v. State,* 159 Md. 161 (1930). In *Wentz* the father was charged with carnal knowledge of his daughter. Another daughter was permitted to testify that the father had also had intercourse with her. In reversing the conviction, Judge Sloan, speaking for the Court, stated:

"The testimony of the other daughter, not as proof of an independent offense but as evidence of the kind of man the father was, and that he was capable of committing such a crime, might have had sufficient weight to tip the scales against him. That it could have had this effect, in view of the opinion of this court that it was not admissible, makes it reversible error."

The present case is distinguishable from *Wentz* for the reason that the evidence in the instant case was not introduced as substantive evidence of the Appellant's character or his tendency to abuse sexually his other children, but for the limited purpose of showing why the victim had not previously reported the assaults upon her. The limiting instruction, given immediately after the testimony supports the distinction between the two cases.

In addition to his reliance on *Wentz*, Appellant cites *Ross v. State*, 276 Md. 664 (1976), and *Worthen v. State*, 42 Md. App. 20 (1979), relating to the generally accepted rule that evidence of other criminal acts is generally held to be inadmissible. *Ross* states five exceptions to the rule[2] none of which, according to Appellant, apply herein. The exceptions in *Ross* were first enunciated by the Court in the case of *Cothron v. State*, 138 Md. 101 (1921). *Worthen*, arguably, could have been reversed for a host of reasons. The Court (Lowe, J.) reversed upon the admission of evidence of prior incidents of child abuse committed by the accused. The principle in *Worthen*, and in *Wentz*, is an application of the policy rule prohibiting the initial introduction by the State of evidence of bad character of the accused.

The cases relied upon by the Appellant correctly state the general rule and the exceptions thereto as they relate to evidence tending to show bad character prior to the time the Appellant has placed his character in evidence by testifying or otherwise presenting evidence of his good character. In the present case, however, the evidence was unquestionably admitted for another purpose, i.e., to explain the failure on the part of the victim to complain at an earlier time.

In *Ross*, the distinction is clearly noted:

> Thus, the State may not present evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than

---

**2.** 1. Motive, 2. intent, 3. absence of mistake, 4. common scheme embracing two or more related crimes, and 5. identity of the person charged. *Ross*, supra, 276 Md. at 669.

> to show a probability that he committed the crime
> on trial because he is a man of criminal character.

*Ross,* supra, p. 669, cited in *Brafman v. State,* 38 Md. App. 465 (1978). In accord, McCormick, *Evidence,* Ch. 17, Sec. 190.

The trial judge is required to offset or avoid as well as he can, the inherent human tendency to substitute a predisposition of guilt for the constitutional presumption of innocence when an accused's reputation as a "bad man" becomes known. *Hoes v. State,* 35 Md. App. 61 (1977). Additionally, where evidence of another crime is admitted, the trial judge must instruct the jury as to the limited purpose for which it is introduced. The failure so to instruct the jury will constitute reversible error if prejudicial. Wharton's *Criminal Evidence,* 13th Ed., Sec. 264. Judge Levin followed the principle of *Hoes* and the substance of *Wharton.*

An additional objection to such evidence under consideration is that it is hearsay. The rule is well established, however, that when the intention, or other mental state of a person at a particular time is material to the issues under trial, evidence of such declarations at the time indicative of his then mental state, even though hearsay, is competent as within an exception to the hearsay rule. See *Adkins v. Brett,* 193 Pac. 251 (Sup. Ct. Calif. 1920).

In the context of the present case, admissibility of conversations establishing the state of mind of the victim is to be considered in the framework of materiality rather than relevancy. Although the two terms are often used interchangeably, materiality in its more precise meaning looks to the relation between the proposition for which the evidence is offered and the issues in the case. See McCormick, *Evidence,* Ch. 16 Sec. 185 and cases cited therein. If the evidence is offered to prove a proposition which is not a matter in issue, or probative of a matter in issue, the evidence is properly rejected as being immaterial. In the instant case, evidence of the reasons why the victim did not complain about sexual abuse by Appellant until five years after the last incident is immaterial to the issue of whether the acts complained of occurred at all.

We recognize, however, that considerable leeway is allowed for proof of facts which are not offered as bearing on the dispute, but as details which fill in the background and give it continuity, interest and color. The question then becomes, is its value worth what it costs? The evidence offered should be excluded if the factual scenario may unduly arouse the jury's emotions of prejudice, hostility or sympathy. *Lyda v. United States,* 321 F. 2d 788 (9th Cir. 1963); *Daniels v. Dillinger,* 445 S.W. 2d 410 (Mo. App. 1969); C.J.S., *Evidence,* Sec. 159 n. 21.

We emphasize that prejudice in this context means more than damage to Appellant's cause, for damage alone is not a sufficient basis for exclusion. What is meant here is an undue tendency to persuade the jury to decide the case on an improper basis, usually an emotional one. In the pungent phrase of the trial judge in *State v. Rollo,* 221 Ore. 428, 351 P. 2d 422 (1960), a party "is entitled to hit as hard as he can above, but not below, the belt".

Having determined that the trial court gave due consideration to the materiality of the testimony of Amy (also referred to herein as Amelia), concerning her discussion with her sister, we turn to the basic issue in this case, which is the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission. *Harris v. United States,* 366 A. 2d 461 (D.C. 1976); *McKnight v. State,* 280 Md. 604 (1977); *McCormick on Evidence,* supra, Sec. 190 at 453-54.

We begin the balancing test, enroute to a determination of discretion judiciously exercised or abused, by recognizing that the discretionary rulings of trial judges carry a "presumption of validity". See *Mathias v. State,* 284 Md. 22 (1978). The presumption is only viable in the absence of certainty, or until certainty or evidence of greater persuasion than that having given rise to the presumption can be ascertained. *Rose & Crown Ltd. v. Shaw Ent.,* 28 Md. App. 548 (1975). Neither are we confined to the evidentiary incident in isolation, but may review it in context with all of

the circumstances of the case as reflected by the record. *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1 (1975).

The scales were judicially balanced in favor of the State in *Mollar v. State,* 25 Md. App. 291 (1975); a contrary result emerged in *McKnight v. State,* 280 Md. 604 (1977). In *Mollar,* the victim of a rape testified that her attacker advised her that he was on parole and had been arrested previously for assault, attempted murder and rape. The State was permitted, over objection, to introduce evidence that the Appellant was on parole and had previously been convicted of assault with intent to murder. The trial judge, diligently adhering to Wharton's *Criminal Evidence*[3], informed the jury that the single purpose for allowing the testimony of other crimes was to establish the identity of the defendant as the perpetrator of the rape in the case then being tried. The defense in *Mollar* was mis-identification.

In affirming, we said (Lowe, J.):

> "The actual need for the evidence of other crimes in the light of the other evidence available to the prosecution, the convincingness of the evidence from the other crimes that the accused was the actor and the strength of the other crimes evidence in supporting the identity of the assailant far outweighs the degree to which the jury would have probably been raised by the evidence to overmastering hostility."

In *McKnight* the balancing involved the joinder of multiple charges and the latent hostility that joinder may cause to the defendant. The trial court denied Appellant's pre-trial motion for separate trials on four robberies committed within a one month period in 1974. A cautionary instruction was given stating that the jury was not to consider the evidence relating to any one of the robberies as having any relevance on any of the other cases, but the jury was to judge each case separately.

---

3. *Wharton,* Sec. 264, that "Where evidence of another crime is admitted, the trial judge must instruct the jury as to the limited purpose for which it is introduced."

In reversing, the Court of Appeals (Levine, J.) stated that evidence of other crimes is inadmissible unless the evidence as to each individual offense is mutually admissible in separate trials. The rationale for the rule is that evidence tending to prove the defendant's criminal disposition is inadmissible because the danger of prejudice outweighs the probative value.

The language of the cases cited directs us, as Judge Lowe stated in *Worthen,* to take "a panoramic view" of the entire trial. That view discloses that the trial judge granted a severance of the three cases to obviate what would clearly have been prejudicial, *i.e.,* a joint trial; he granted a motion in limine to preclude any reference by the State to acts involving the other children; and gave a limiting instruction immediately after the victim, Amy, related the substance of her conversation with her sister.

As an added precaution, the trial court had Amy testify, in camera, subject to cross-examination, concerning the conversation with her sister, Cathy. Prior to Amy's testimony in open court, the trial judge made several rulings that precluded the witness from making any reference to a third sister and refused to permit the State to call Cathy to corroborate Amy's reference to the conversation that triggered the entire case.

At trial, Amy was subjected to extensive cross-examination directed primarily to her credibility. The panoramic view further discloses that Appellant's wife was called as a defense witness and acknowledged receiving a telephone call from Amy concerning the sexual activities of the Appellant with Amy and Cathy. The witness, Mrs. Werner, said she left her husband at that time and returned to his home several weeks later following an argument with Amy and Cathy during which Amy said that both she and Cathy had lied about the sexual charges. The necessity for this testimony is readily apparent, i.e., the prior admission into evidence of Amy's discussion with Cathy concerning sexual relations with Appellant. The Appellant attempted to diffuse the impact of the State's evidence, to which he made

timely objection, by showing that it may not be true. Appellant has not waived his previous objection by offering answering evidence.[4]

In the balancing process, we point out that the disputed testimony was initially introduced by the State, apparently in anticipation of the defense seizing upon any unexplained delay as an attack upon the credibility of the prosecuting witness, Amy. Had the State remained silent regarding the lapse of time from the last act of intercourse until Amy's complaint, Appellant's dilemma would have been whether to avoid the issue and lose the advantage of bringing the delay to the attention of the jury, or to cross-examine Amy concerning her five year silence, with the attendant risk that her answers would reveal the very evidence the Appellant sought to suppress.

If the testimony of other crimes came about through cross-examination by counsel for Appellant, or from other defense testimony, we perceive no reason why it should not have been admitted. The State's initial presentation of the evidence in anticipation of a defense tactic that may well have never taken place, however, is another matter. We conclude that the introduction of this testimony by the State in its case in chief was prejudicial error. We offer no opinion as to whether the State could have explained the delay in some manner short of a full statement that Appellant was molesting the younger sister. The cost of admitting the testimony of subsequent sexual encounters by the Appellant with another stepdaughter far outweighs the value of an explanation for not reporting the crime in timely fashion.

We acknowledge that the trial judge painstakingly sought to establish fundamental fairness to the State and to the Appellant. The severance of the cases and the granting of a motion *in limine,* however, were meaningless in view of the devastating testimony that followed.

---

4. Where evidence is relevant to the issues and probably damaging to the adversary's case, or though irrelevant is prejudice-arousing to a material degree, and if the adversary has seasonably objected or moved to strike, then the adversary should be entitled to give answering evidence as of right. McCormick, *Evidence,* 2d Ed., Ch. 6 (1972); *Lake Roland Elev. Ry. Co. v. Weir,* 86 Md. 273 (1897) (a considered dictum).

The State insists that the limiting instruction saved the day. We disagree. In *McKnight,* supra, the court rejected a similar argument stating:

> "The effectiveness of limiting instructions is premised on the assumed competency of the jury to disregard the evidence which would be inadmissible in a trial on any one of the charges. The ability of jurors to accomplish this feat is questionable at best."

We recognize that the law frequently permits the jury to hear evidence admitted for a limited purpose and presumes that the jury will follow a given instruction. Where the testimony is prejudicial to the extent that a defendant may be denied a fair and impartial trial, however, a limiting instruction will not cure the flaw.

In the context of this case the witness had testified to the graphic details of sexual abuse by her stepfather. The witness was then permitted to relate a conversation with her sister and to describe her sister's appearance as being "just like I looked five years ago". The jury was then informed that the witness, Amy, decided to notify the police of Appellant's conduct because fifteen year old Cathy was being subjected to sexual assaults and was contemplating running away from home. The limiting instruction informed the jury that the evidence was admitted not for the truth of the matters alleged, but to show Amy's state of mind. At this juncture, we can only speculate as to the state of mind of the jury.

In *Krulewitch v. United States,* 336 U.S. 440 (1949), Justice Jackson said of limiting instructions by the trial judge:

> "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction."

We are unwilling, on the facts of this case, to assume that the jury complied with the instruction where, as here, we have said that the prejudicial effect of the evidence intro-

duced by the State outweighs its probative value. Concededly, the State has the right to select the order in which cases are called for trial. The State's option to call Amy's case before Cathy's does not include the right to introduce evidence indirectly that they clearly could not produce directly. The evidence of other crimes was inadmissible as a part of the State's case. We cannot say that it was harmless beyond a reasonable doubt. We, therefore, reverse. In view of our determination as to the first issue, it is unnecessary to address the issue of rebuttal evidence.

*Judgments reversed.*
*Remanded for new trial.*
*Costs to be paid by Mayor and City*
*Council of Baltimore.*