489 A.2d 1119

**STATE of Maryland**

v.

**Jerome Buckler WERNER.**

**No. 136, Sept. Term, 1983.**

Court of Appeals of Maryland.

April 4, 1985.

Stephanie J. Lane, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellant.

Harold I. Glaser, Baltimore (Henry J. Myerberg and Saundra C. Rothstein, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

In this criminal case, involving charges that the defendant had committed sex offenses against one of his stepdaughters, the State was allowed to elicit testimony that the defendant had committed similar offenses against another stepdaughter. The issue concerns the admissibility of such evidence under the circumstances.

## I.

In 1981, Jerome Werner[1] was indicted in Baltimore City on charges of incest,[2] rape,[3] carnal knowledge of a child under fourteen,[4] and related offenses. The alleged victims were his three stepdaughters. Two indictments charged criminal conduct against the eldest stepdaughter, Amy, from 1973 through 1975; two indictments charged criminal conduct against another stepdaughter, Kimberly, in 1977; and three indictments charged criminal conduct against the youngest stepdaughter, Cathy, in 1980.

The State moved for a joint trial on all of the charging documents pursuant to former Maryland Rule 745 b, which is now Maryland Rule 4–253(b).[5] The defendant opposed

---

* Davidson, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

1. The indictments, and many of the other documents in this case, refer to the defendant as "Jerome Weiner." His name, however, is "Jerome Werner." At the beginning of the trial, upon defense counsel's motion, the court ordered that the last name "Weiner" be changed to "Werner" whenever it appears in the case.

2. Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 335.

3. Code (1957, 1971 Repl.Vol.), Art. 27, § 461.

4. Code (1957, 1971 Repl.Vol.), Art. 27, § 462.

5. Former Rule 745 b provided as follows:

the motion on the ground that, in a trial involving alleged offenses against one victim during one period of time, evidence of offenses against a different victim during a different period of time would not be admissible.[6] The defendant relied upon *Wentz v. State*, 159 Md. 161, 164–166, 150 A. 278 (1930), and *Berger v. State*, 179 Md. 410, 414, 20 A.2d 146 (1941), in which this Court took the position that, in a prosecution of a man for incest with one of his daughters, the State is prohibited from introducing evidence to show that the defendant committed incest with another daughter.[7]

The State in response, after citing some recent studies concerning sexual offenses within a family, "submit[ted] to the Court that *Wentz* and *Berger* and even for that matter the *Worthen* case [8] are set against a back-drop of being uninformed with regard to the reality of life that exists." The State urged the trial court to adopt the view of the dissenting opinion in *Wentz*, 159 Md. at 167.

The court, after reviewing the cases, refused to adopt the State's position and denied the motion for a joint trial.

---

"If a defendant has been charged in two or more charging documents, either party may move for a joint trial of the charges. In ruling on the motion, the court shall inquire into reasons for the motion and the ability of either party to proceed at a joint trial."

6. We have held that a defendant is entitled to separate jury trials for distinct offenses where the evidence as to one offense or set of offenses would not be admissible with regard to another offense or set of offenses. *McKnight v. State*, 280 Md. 604, 375 A.2d 551 (1977). *See, e.g., Osburn v. State*, 301 Md. 250, 254–255, 482 A.2d 905 (1984); *Graves v. State*, 298 Md. 542, 471 A.2d 701 (1984); and cases therein cited.

7. On the other hand, in a prosecution for incest, evidence of other acts of "incest between the *same* parties prior to the offense charged" is admissible, *Wentz*, 159 Md. at 165, 150 A. 278, emphasis added. In addition, where sex offenses committed upon different daughters of the defendant were "practically at the same time and place," a "common scheme" was deemed to be present and, therefore, the defendant was not entitled to separate trials, *Williams v. State*, 214 Md. 143, 152, 132 A.2d 605 (1957).

8. *Worthen v. State*, 42 Md.App. 20, 37–43, 399 A.2d 272 (1979).

Thereafter the State called for trial the two indictments charging sex offenses against the eldest stepdaughter, Amy. Prior to jury selection, the State made a proffer of certain testimony which it wished to elicit, and it sought a ruling by the court concerning the admissibility of such evidence. The State indicated that there was a five year delay from the time the last alleged criminal act occurred, in 1975, until the time Amy reported the crime, in 1980, and that the reason Amy finally went to the authorities was the revelation of her youngest sister, Cathy, that Cathy had also been a victim of incest by the defendant. The prosecuting attorney proffered that "I'm going to ask [Amy] the question when was the first time you told anybody about this? What was the occasion of you telling that? What prompted you finally after all of this time to say something? She's going to say quite honestly ... [that] Cathy said that the defendant had sex with her." The State argued that it was necessary to elicit such testimony, not as substantive evidence, but to explain Amy's years of silence. Defense counsel objected to the proffered testimony, and argued that a cautionary instruction would not cure the prejudice. The trial court ruled that the testimony would be admitted, with a limiting jury instruction immediately after Amy's direct examination, cautioning the jury that the evidence was admitted only to explain why Amy finally came forward after a five year silence.

After jury selection, Amy testified first out of the jury's presence, in order that the court could determine the scope of her testimony. Amy indicated that she had remained silent for five years after the attacks had ceased. She testified that she did not go to the authorities because she was afraid of the defendant, because she was of the view that no one would believe her, and because she did not want to hurt her mother. She then described her meeting with Cathy, when Cathy revealed that she, too, had been assaulted by the defendant, as follows:

"THE COURT: What did Cathy say to you? Did she say anything to you?

"A.  ... I asked her if anything had happened between her and Jerry.  I didn't say what.  I just asked her if anything happened between her and Jerry, and she said, yes.

"I said, what happened?  She said he tried to have intercourse with me.  I said, are you saying he tried or he did?  I said there's a big difference there.  She said he did."

Amy continued, testifying that she informed Cathy that the defendant had also assaulted her, and explaining that Cathy's revelation prompted her to go to the authorities.  Amy then repeated this testimony, in the presence of the jury, on direct examination.  Immediately thereafter, the court gave the jury a limiting instruction.

The case went to the jury on two counts, incest and carnal knowledge, and the defendant was found guilty of both.  The Court of Special Appeals reversed the convictions, *Weiner v. State*, 55 Md.App. 548, 464 A.2d 1096 (1983).  The appellate court acknowledged that the State did not introduce the testimony as substantive evidence, but as rehabilitative evidence in light of the anticipated impeachment (55 Md.App. at 558, 464 A.2d 1096):

"In the balancing process, we point out that the disputed testimony was initially introduced by the State, apparently in anticipation of the defense seizing upon any unexplained delay as an attack upon the credibility of the prosecuting witness, Amy.  Had the State remained silent regarding the lapse of time from the last act of intercourse until Amy's complaint, Appellant's dilemma would have been whether to avoid the issue and lose the advantage of bringing the delay to the attention of the jury, or to cross-examine Amy concerning her five year silence, with the attendant risk that her answers would reveal the very evidence the Appellant sought to suppress."

The Court of Special Appeals indicated that if the State had waited until Amy was specifically impeached during cross examination, the evidence might have then been admissible. *Ibid.*  Nevertheless, the court reversed the convictions,

holding that the prejudice outweighed any fairness to the State, and that a limiting instruction was not adequate to cure the prejudice under the circumstances. In light of its reversal on this issue, the Court of Special Appeals did not reach another matter raised by the defendant.

The State filed a petition for a writ of certiorari, contending only that the evidence was admissible to explain Amy's lengthy period of silence. We granted the petition and shall affirm.

## II.

In Maryland, as elsewhere, evidence of other crimes committed by the defendant is generally inadmissible in a criminal case. The reasons for the rule were recently set forth by Chief Judge Murphy, writing for the Court in *Straughn v. State,* 297 Md. 329, 333, 465 A.2d 1166 (1983), as follows:

> "Of course, evidence of a defendant's prior criminal acts may not be introduced to prove that he is guilty of the offense for which he is on trial. *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980); *State v. Jones,* 284 Md. 232, 395 A.2d 1182 (1979); *Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978); *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977); *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976). There are two reasons for the rule. First, if a jury considers a defendant's prior criminal activity, it may decide to convict and punish him for having a criminal disposition. Second, a jury might infer that because the defendant has committed crimes in the past, he is more likely to have committed the crime for which he is being tried. *Tichnell, supra,* 287 Md. at 711 [415 A.2d 830]. Consequently, any probative value that the evidence might have is outweighed by the potential prejudice to the defendant and is properly excluded."

*See McCormick on Evidence,* § 190 (3d ed. 1984). In *Ross v. State,* 276 Md. 664, 669–670, 350 A.2d 680 (1976), we summarized various exceptions, recognized by Maryland cases, to this general exclusionary rule:

"There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. *Wentz v. State,* 159 Md. 161, 164, 150 A. 278 (1930); *Cothron v. State,* 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State,* 23 Md.App. 645, 650, 329 A.2d 430, *cert. denied,* 274 Md. 726 (1974); *Wethington v. State* [3 Md.App. 237, 238 A.2d 581 (1968)], *Gorski v. State* [1 Md.App. 200, 228 A.2d 835 (1967)], both *supra.* Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, *Berger v. State,* 179 Md. 410, 414, 20 A.2d 146 (1941); and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. C. McCormick, Evidence § 190, *supra.*"

*See Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980); *State v. Jones,* 284 Md. 232, 238–239, 395 A.2d 1182 (1979); *Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978). In addition to these categories, evidence of certain other crimes, of which the defendant has been convicted, is admissible for impeachment purposes if the defendant takes the stand. *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981).

At no time in the present case has it been argued that the disputed testimony was admissible under one of the above-mentioned categories. Since this case was severed from the other two prosecutions against the defendant, the issue essentially has been whether the testimony was admissible, not as substantive evidence, but to explain an asserted impeaching circumstance in the witness's account.

III.

This Court has never previously considered whether evidence of other crimes by a defendant is admissible in criminal cases to rehabilitate an impeached witness. Other courts, however, have uniformly held in criminal cases that a prosecution witness who has been impeached on cross-examination can be rehabilitated with otherwise inadmissible evidence of other crimes committed by the defendant, if a sufficient need for such rehabilitation is shown. *Bracey v. United States*, 142 F.2d 85, 89–90 (D.C.Cir.), *cert. denied*, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); *State v. Farmer*, 97 Ariz. 348, 353–354, 400 P.2d 580 (1965); *Stitely v. United States*, 61 A.2d 491 (D.C.1948); *People v. Burke*, 52 Ill.App.2d 159, 161, 201 N.E.2d 636 (1964); *Meeker v. State*, 182 Ind.App. 292, 395 N.E.2d 301, 305 (1979); *State v. Austin*, 27 N.C.App. 395, 219 S.E.2d 279, 281 (1975), *cert. denied*, 289 N.C. 452, 223 S.E.2d 160 (1976); *State v. Harman*, 270 S.E.2d 146, 155 (W.Va.1980).

In *State v. Harman, supra,* the defendant was tried for breaking and entering. The State's principal witness was the defendant's ex-girlfriend. On cross-examination, the defendant impeached that witness by attempting to show that her motive for reporting his crimes, and then testifying against him, was anger at the defendant for his having left her. In order to rehabilitate the witness, the State asked her to explain why she became hostile to the defendant. She stated that the defendant had told her that he was having incestuous relations with his young stepdaughter, and the information had offended her to the extent that she contacted the police. The defendant objected on the ground that her statement constituted inadmissible evidence of other crimes. The Supreme Court of West Virginia discussed the propriety of admitting this evidence, stating (270 S.E.2d at 155):

"[T]he party offering the witness is entitled to rehabilitate him. In this connection, the underlying reasons for the bias or hostility may be shown if they legitimately serve to rehabilitate the witness and are not simply used

as a means of introducing inflammatory matter into the case.... The issue often turns on the severity of the impeachment versus the inflammatory nature of the rehabilitation evidence. If the impeachment is only slight and the rehabilitative evidence is highly inflammatory, the inflammatory evidence should not be permitted."

The *Harman* court found that the impeachment was "rather damaging in its thrust that she was jealous and angry" (*ibid.*), and further found that, although the testimony was inflammatory, it was not elaborated upon. As the impeachment was severe, the court upheld the admission of the evidence.

The balancing test applied in *Harman* has been used in other cases. For example, in *People v. Burke, supra,* the defendant was accused of committing incest with his daughter. The victim was the State's principal witness. On cross-examination the defendant impeached the witness by eliciting her statement that she had hated her father before he committed the act for which he was being tried. On redirect, the trial court allowed her to explain why she hated her father. She stated that her ill feelings stemmed from various other unnatural sex acts which he had previously performed upon her. The Illinois court upheld the trial judge's admission of the evidence, stating (52 Ill. App.2d at 161–162, 201 N.E.2d 636):

"We agree with the defendant that the testimony was prejudicial.... However, the fact that the evidence was prejudicial does not mean that it was erroneously admitted....

"The cross-examination of Diane had established that she hated her father prior to the incident in question. This fact, standing alone and unexplained, could furnish the basis for a powerful argument that Diane could be motivated by this ill-feeling to invent the charge against her father. The State was clearly entitled to bring out the reason for her attitude toward her father, provided the reason had a legitimate tendency to lessen the impeaching effect of her admitted bias and was not a mere

excuse to load the record with extraneous matter to the prejudice of the defendant."

A very instructive case is *Stitely v. United States, supra.* In that case the defendant was charged with assaulting a woman on a streetcar by placing his hand up under her dress and upon her leg. On cross-examination of the victim, defense counsel elicited that she had delayed reporting the incident to the police. On redirect examination, she was asked to explain the delay. The witness stated that she had not intended to report the incident to the police, but that later, when she was again a passenger on a streetcar, she saw the defendant commit a similar assault upon another woman. In upholding the admissibility of this testimony, the District of Columbia court stated (61 A.2d at 492):

"The fact that there was a delay in making complaint was first brought into the case by defendant on cross-examination of the prosecuting witness. By so doing defendant sought to obtain a substantial advantage. In rape cases and other cases of the nature of a sexual assault, delay in making complaint is a subject for consideration of the jury and may seriously affect the credibility of the complaining witness.... Defendant having injected this issue in the case and secured a favorable admission, the Government was entitled to meet it by explaining the delay.... The Government's case stood or fell on the credibility of its only witness. When that credibility was attacked by showing delay in complaint, the Government was entitled to show why a prompt report was not made and why a delayed report was made. A witness may be re-examined by the party calling him upon all topics on which he has been cross-examined for the purpose of explaining any new facts which came out."

■ In light of the holdings that evidence of other offenses is generally admitted for rehabilitation if the impeachment is substantial, and considering the limited purpose for which such evidence can be used, we agree with the above-discussed cases that evidence of the defendant's other crimes is admissible in a criminal case to rehabilitate a

State's witness once the witness has been impeached in a substantial respect.

## IV.

■ As previously indicated, in all of the above-cited cases holding evidence of other crimes admissible, the prosecution's witness was impeached by defense counsel during cross-examination, and the other crimes evidence was then admitted on redirect examination in order to explain the cross-examination testimony. Furthermore, as illustrated by the quotation from the *Stitely* case, the reasoning of the above-cited opinions would only apply to admissibility during the prosecution's redirect examination. *See also, e.g., State v. Farmer, supra,* 97 Ariz. at 354, 400 P.2d 580 ("To preclude the State from rehabilitating one of its impeached witnesses by this mode of rehabilitation would allow the defendant an unwarranted advantage in impeaching a witness with an assurance that his credibility would remain impaired"); *State v. Austin, supra,* 219 S.E.2d at 281 ("The State had the right to have her explain the reason.... even though the testimony may not have been competent in the State's examination in chief"). In the present case, on the contrary, the other crimes evidence was admitted during the prosecution's direct examination of its witness.

■ The State attempts to justify the admissibility of the testimony on direct examination on the theory that Amy's "credibility was automatically impeached by the unexplained lapse of time" and that eliciting the testimony of sex offenses against Cathy was "a proper device for protecting the victim's credibility before the jury." (Petitioner's brief, p. 9.) Nevertheless, "a party ordinarily may not sustain the credibility of his own witness absent an attack upon credibility by the other side." *City of Baltimore v. Zell,* 279 Md. 23, 27, 367 A.2d 14 (1977), and authorities there cited. While there are exceptions to this general principle, the State has cited no authority, and we are aware

of none, supporting an exception under circumstances like those in the present case.

The State maintains that it faced a situation where, in order for its chief witness to relate information necessary for the State's case, the witness was required to reveal an obvious impeaching matter. We assume arguendo that, if such situation were actually presented, the party calling the witness would ordinarily be entitled on direct examination to sustain the credibility of the witness by eliciting an explanation for the impeaching matter. We shall further assume, solely for purposes of this case, that if the explanation necessarily involved otherwise inadmissible evidence of the defendant's prior offenses, the State would still be permitted to present the testimony.

However, contrary to the basic premise underlying the State's argument, this was not a case where the State's witness was required to disclose an impeaching matter. The State's chief witness Amy could have testified fully concerning the defendant's alleged offenses against her without revealing that she had made a complaint, or when she had made a complaint, or that there had been a delay in making a complaint. The fact that Amy had complained, or that she had waited a substantial period of time before making a complaint, was not, in any respect, necessary evidence for the prosecution's case in chief. Merely because the trial was being held a substantial period of time after the alleged offenses, would not have automatically created an inference that the reason for the delay was the victim's failure to complain. It is common knowledge that criminal trials are, unfortunately, delayed for many reasons having nothing to do with a victim's tardiness in reporting the crime.[9]

---

**9.** *See, e.g., Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (over five years from the date of the offense until the trial); *Wilson v. State,* 281 Md. 640, 382 A.2d 1053, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978) (over seven years between the date of the offense and the final appellate orders directing that the initial

Like the prosecution in *Stitely v. United States, supra,* the State in the case at bar could have refrained during the direct examination of the victim from introducing any evidence relating to the victim's complaint. Then, if defense counsel during cross-examination had injected the issue into the trial, the State in this case, like the prosecution in *Stitely,* could on redirect examination have elicited the testimony explaining the delay in making a complaint. If, on the other hand, defense counsel did not raise the matter of delay, it would not have been before the jury, and the credibility of the victim would not have been impaired on such ground. Therefore, the dilemma which the State has claimed that it faced in this case was entirely of the State's own making.

■ Not only did the State cause its alleged dilemma, by introducing during its direct examination of the victim the evidence of the five-year-old complaint, but it did so in apparent violation of the Maryland law of evidence. In prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense, but such evidence is inadmissible as part of the prosecution's case in chief if the complaint was not made at the time of or relatively soon after the crime. *See, e.g., Leek v. State,* 229 Md. 526, 527, 184 A.2d 808 (1962), *cert. denied,* 372 U.S. 946, 83 S.Ct. 940, 9 L.Ed.2d 971 (1963) (evidence of complaint made "promptly" held admissible); *Shoemaker v. State,* 228 Md. 462, 466, 180 A.2d 682 (1962) ("[e]vidence of the victim's complaint made while the alleged injury was recent is admissible"); *Murphy v. State,* 184 Md. 70, 76, 40 A.2d 239 (1944) (it may "be shown that the prosecutrix made a complaint shortly after the commission of the crime"); *Green v. State,* 161 Md. 75, 81, 155 A. 164 (1931) ("the complaint of the victim, if recently made after the

trial be held). *See also, e.g., State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984), and its progeny.

alleged outrage, is admissible"); *Legore v. State*, 87 Md. 735, 737, 41 A. 60 (1898) ("[h]er complaints made while the injury was recent may therefore be proved"); *Parker v. State*, 67 Md. 329, 10 A. 219 (1887); *Estep v. State*, 14 Md.App. 53, 67–68, 286 A.2d 187 (1972); *Hubbard v. State*, 2 Md.App. 364, 369–370, 234 A.2d 775 (1967), *cert. denied*, 249 Md. 732, *cert. denied*, 393 U.S. 889, 89 S.Ct. 208, 21 L.Ed.2d 168 (1968); *Culver v. State*, 1 Md.App. 406, 414, 230 A.2d 361 (1967).

■ What is a "recent" complaint for purposes of this evidentiary principle is not rigid. In *Legore v. State, supra,* the victim was assaulted in the morning and waited until her husband came home that evening before telling anyone; this Court held that, in light of the explanation for waiting until evening, the complaint was recent and therefore admissible. Quoting from another case, the Court stated (87 Md. at 737, 41 A. 60):

> " 'There may be many reasons why a failure to make immediate or instant outcry should not discredit the witness. A want of suitable opportunity, or fear, may sometimes excuse or justify a delay. There can be no iron rule on the subject. The law expects and requires that it should be prompt; but there is, and can be, no particular time specified. The rule is founded upon the laws of human nature, which induces a female thus outraged to complain at the first opportunity.' "

In *Parker v. State, supra,* however, this Court held that evidence of the victim's complaint made one week after the sexual offense was inadmissible.[10] However flexible may

---

**10.** The *Parker* case also indicated that when the complaint is recent, only the fact of making the complaint is admissible, and not the surrounding circumstances, 67 Md. at 330–331, 10 A. 219. This aspect of the *Parker* case was later modified, and if the complaint qualifies as a recent one, the prosecution may also present evidence of the surrounding circumstances. *Green v. State,* 161 Md. 75, 81, 155 A. 164 (1931); *Blake v. State,* 157 Md. 75, 79, 145 A. 185 (1929).

be the concept of "recent," it is clear that the five-year delay in the case at bar could not be considered "recent" without wholly abandoning the evidentiary rule that only recent complaints are admissible as part of the State's case in chief.

As indicated in *Green v. State, supra,* 161 Md. at 80, the failure of a sex offense victim to complain at the time of the crime or shortly thereafter is a matter "that the defense may prove" and "would weigh heavily against the state." It is an impeaching circumstance which, if elicited by the defense, can then be explained by the State.

In the instant case, however, the State impeached its own witness by bringing out on direct examination the fact that she waited five years to complain.[11] This was, it would seem, inadmissible evidence as part of the State's case in chief. But, whether or not inadmissible, it was not necessary. The State itself, by this "bootstrap" operation, created the alleged need for presenting evidence of other crimes by the defendant. The Court of Special Appeals correctly held that, under these circumstances, the evidence of other offenses was inadmissible.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**11.** In Maryland we continue to adhere to the rule that ordinarily a party may not impeach its own witness. *Poole v. State,* 290 Md. 114, 118, 428 A.2d 434 (1981).